## UNITED STATES *v.* GERMAINE.

1. Civil surgeons appointed by the Commissioner of Pensions under sect. 4777 of the Revised Statutes are not officers of the United States.
2. The Commissioner of Pensions is not the head of a department, within the meaning of sect. 2, art. 2, of the Constitution, prescribing by whom officers of the United States shall be appointed.
3. The present case distinguished from *United States* v. *Hartwell*, 6 Wall. 385.

ON a certificate of division in opinion between the judges of the Circuit Court of the United States for the District of Maine.

The facts are stated in the opinion of the court.

*Mr. Assistant Attorney-General Smith* for the United States. *Mr. Thomas B. Reed, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

The defendant was appointed by the Commissioner of Pensions to act as surgeon, under the act of March 3, 1873, the third section of which is thus stated in the Revised Statutes as sect. 4777 :—

" That the Commissioner of Pensions be, and he is hereby, empowered to appoint, at his discretion, civil surgeons to make the periodical examination of pensioners which are or may be required by law, and to examine applicants for pension, where he shall deem an examination by a surgeon appointed by him necessary; and the fee for such examinations, and the requisite certificates thereof in duplicate, including postage on such as are transmitted to pension agents, shall be two dollars, *which shall be paid by the agent for*.

*paying pensions* in the district within which the pensioner or claimant resides, out of any money appropriated for the payment of pensions, under such regulations as the Commissioner of Pensions may prescribe."

He was indicted in the district of Maine for extortion in taking fees from pensioners to which he was not entitled. The law under which he was indicted is thus set forth in sect. 12 of the act of 1825 (4 Stat. 118) : —

"Every officer of the United States who is guilty of extortion under color of his office shall be punished, by a fine of not more than $500, or by imprisonment not more than one year, according to the aggravation of his offence."

The indictment being remitted into the Circuit Court, the judges of that court have certified a division of opinion upon the questions whether such appointment made defendant an officer of the United States within the meaning of the above act, and whether upon demurrer to the indictment judgment should be rendered for the United States or for defendant.

The counsel for defendant insists that art. 2, sect. 2, of the Constitution, prescribing how officers of the United States shall be appointed, is decisive of the case before us. It declares that "the President shall nominate, and by and with the advice and consent of the Senate shall appoint, ambassadors, other public ministers and consuls, judges of the Supreme Court, and *all* other *officers* of the United States, whose appointments are not *herein* otherwise provided for and which shall be established by law. But the Congress may, by law, vest the appointment of such inferior officers as they may think proper, in the President alone, in the courts of law, or in the heads of departments."

The argument is that provision is here made for the appointment of *all* officers of the United States, and that defendant, not being appointed in either of the modes here mentioned, is not an *officer*, though he may be an agent or employé working for the government and paid by it, as nine-tenths of the persons rendering service to the government undoubtedly are, without thereby becoming its officers.

The Constitution for purposes of appointment very clearly divides all its officers into two classes. The primary class re-

quires a nomination by the President and confirmation by the Senate. But foreseeing that when offices became numerous, and sudden removals necessary, this mode might be inconvenient, it was provided that, in regard to officers inferior to those specially mentioned, Congress might by law vest their appointment in the President alone, in the courts of law, or in the heads of departments. That all persons who can be said to hold an office under the government about to be established under the Constitution were intended to be included within one or the other of these modes of appointment there can be but little doubt. This Constitution is the supreme law of the land, and no act of Congress is of any validity which does not rest on authority conferred by that instrument. It is, therefore, not to be supposed that Congress, when enacting a criminal law for the punishment of officers of the United States, intended to punish any one not appointed in one of those modes. If the punishment were designed for others than officers as defined by the Constitution, words to that effect would be used, as servant, agent, person in the service or employment of the government; and this has been done where it was so intended, as in the sixteenth section of the act of 1846, concerning embezzlement, by which any officer *or agent* of the United States, *and all persons participating in the act*, are made liable. 9 Stat. 59.

As the defendant here was not appointed by the President or by a court of law, it remains to inquire if the Commissioner of Pensions, by whom he was appointed, is the head of a department, within the meaning of the Constitution, as is argued by the counsel for plaintiffs.

That instrument was intended to inaugurate a new system of government, and the departments to which it referred were not then in existence. The clause we have cited is to be found in the article relating to the Executive, and the word as there used has reference to the subdivision of the power of the Executive into departments, for the more convenient exercise of that power. One of the definitions of the word given by Worcester is, " a part or division of the executive government, as the Department of State, or of the Treasury." Congress recognized this in the act creating these subdivisions of the executive branch by giving to each of them the name of a

department.   Here we have the Secretary of State, who is by
law the head of the Department of State, the Departments of
War, Interior, Treasury, &c.   And by one of the latest of
these statutes reorganizing the Attorney-General's office and
placing it on the basis of the others, it is called the Depart-
ment of Justice.   The association of the words " heads of
departments " with the President and the courts of law
strongly implies that something different is meant from the
inferior commissioners and bureau officers, who are themselves
the mere aids and subordinates of the heads of the departments.
Such, also, has been the practice, for it is very well understood
that the appointments of the thousands of clerks in the
Departments of the Treasury, Interior, and the others, are
made by the heads of those departments, and not by the heads
of the bureaus in those departments.

So in this same section of the Constitution it is said that
the President may require the opinion in writing of the princi-
pal officer in each of the executive departments, relating to the
duties of their respective offices.

The word " department," in both these instances, clearly
means the same thing, and the principal officer in the one case
is the equivalent of the head of department in the other.

While it has been the custom of the President to require
these opinions from the Secretaries of State, the Treasury, of
War, Navy, &c., and his consultation with them as members of
his cabinet has been habitual, we are not aware of any instance
in which such written opinion has been officially required of
the head of any of the bureaus, or of any commissioner or
auditor in these departments.

*United States* v. *Hartwell* (6 Wall. 385) is not, as supposed,
in conflict with these views.   It is clearly stated and relied on
in the opinion that Hartwell's appointment was approved by
the Assistant Secretary of the Treasury as acting head of that
department, and he was, therefore, an officer of the United
States.

If we look to the nature of defendant's employment, we
think it equally clear that he is not an officer.   In that case
the court said, the term embraces the ideas of tenure, duration,
emolument, and duties, and that the latter were continuing and

permanent, not occasional or temporary. In the case before us, the duties are *not* continuing and permanent, and they *are* occasional and intermittent. The surgeon is only to act when called on by the Commissioner of Pensions in some special case, as when some pensioner or claimant of a pension presents himself for examination. He may make fifty of these examinations in a year, or none. He is required to keep no place of business for the public use. He gives no bond and takes no oath, unless by some order of the Commissioner of Pensions of which we are not advised.

No regular appropriation is made to pay his compensation, which is two dollars for every certificate of examination, but it is paid out of money appropriated for paying pensions in his district, under regulations to be prescribed by the commissioner. He is but an agent of the commissioner, appointed by him, and removable by him at his pleasure, to procure information needed to aid in the performance of his own official duties. He may appoint one or a dozen persons to do the same thing. The compensation may amount to five dollars or five hundred dollars per annum. There is no penalty for his absence from duty or refusal to perform, except his loss of the fee in the given case. If Congress had passed a law requiring the commissioner to appoint a man to furnish each agency with fuel at a price per ton fixed by law high enough to secure the delivery of the coal, he would have as much claim to be an officer of the United States as the surgeons appointed under this statute.

We answer that the defendant is not an officer of the United States, and that judgment on the demurrer must be entered in his favor. Let it be so certified to the Circuit Court.