**MILLER v. McCAUGHN, Collector of Internal Revenue.**

District Court, E. D. Pennsylvania. July 13, 1927.

No. 12184.

1. Internal revenue ⬤⟹7(1)—Meaning of federal income tax statutes must be found in statutes, and may be broader than constitutional immunity of state.

Though the constitutional limitation on powers of state or federal government to tax the other may be considered in construing federal income tax statutes, meaning of such a statute must nevertheless be found in the enactment, and may be broader than the constitutional exemption.

2. Internal revenue ⬤⟹7(5)—Income of state officer or employee must come from state, to be exempt from federal taxation.

Compensation of state officer or employee, to be exempt from federal taxation, must come to him from state.

3. Internal revenue ⬤⟹7(5)—Compensation of state employee, employed to report to court financial standing of corporations applying for approval as sureties, coming wholly from such corporations, held taxable by federal government.

Compensation of examiner or auditor appointed by state court to report to it the financial standing of corporations applying to be approved as sureties on bonds required by court, coming wholly from surety companies on whose financial resources he reports under rule of court that such applicants shall deposit a sum of money with clerk of court, a designated part of which goes to examiner, *held* taxable by federal government.

At Law. Action by Philippus W. Miller against Blakeley D. McCaughn, Collector of Internal Revenue. On rule for judgment. Rule discharged.

S. G. Birnie, of Philadelphia, Pa., for plaintiff.

George W. Coles, U. S. Atty., of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The conclusion reached in this case is that the rule for judgment should be discharged. Through some oversight no formal disposition has been made of the case.

### Discussion.

The parties have a question of law to be answered, and the judgment to be entered is agreed to be controlled by this answer. The question can be most clearly formulated through an outline fact statement.

The state courts are frequently called upon to require of parties before them surety bonds. The practice has become almost universal to give what is called "corporate security." What is meant is that a corporation which makes a business of suretyship on bonds and other contracts becomes surety on the required bonds. The need thus arises that the court having the duty to approve such bonds must be informed of the responsibility of the surety.

The modern trend, so general as to be practically imperative, is to make a job out of everything for somebody. Hence the examiner, auditor, or accountant appointed to report to the court the financial standing of corporations which make application to be approved as sureties. The rules of court regulating the conditions under which corporations may be accepted as sureties provide for the appointment of a "standing examiner," or "auditor," as he variously designated. Compensation for his services is paid indirectly by the corporations, through the requirement that at the time of its application to be approved as surety each shall make deposit of a sum of money, a designated part of which goes to the examiner. He receives no other compensation for what he does for the court.

The present dispute is whether income from this source is taxable. Plaintiff asserts it is not because "received by him as compensation for personal services as an officer or employee of a state or political subdivision thereof." It is an oft-quoted aphorism that the power to tax is the power to destroy. It has in consequence been held that it is beyond the constitutional power of nation or state to tax the other. Collector v. Day, 11 Wall. (78 U. S.) 113, 20 L. Ed. 122. This is likewise the doctrine of the oft-cited bank case of McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579.

[1] Two propositions have been urged upon us by the respective parties, neither of which we can accept. One is that the tax exemption is no broader than the constitutional immunity. There is no constitutional question which arises. It is all one of the construction of the act of Congress. If the plaintiff has not been taxed, the tax payment cannot be lawfully exacted, whether he might have been taxed or not. The cases to which we have been referred by the plaintiff merely observe passim that, as the constitutional limitation of power supplied the motive for the congressional enactment, the latter should be construed in whatever light this fact sheds upon the question of its meaning. The meaning must none the less be found in the enactment, and may be broader than the constitutional exemption.

[2] The other proposition, advanced by the

plaintiff, is that the sole question is that of the status of the plaintiff as an officer or employee of the state court. We do not so view it. There are two thoughts: One, the thought of compensation for services; the other that of the recipient being a state officer or employee. The proposition advanced has some support in the verbiage of the statute, but not, we think, in its fair meaning. The compensation must not merely come to a state officer or employee, but it must come to him from the state, to be exempt. Unless this second line is drawn, and drawn where we have drawn it, it is difficult to determine where it should be drawn. A moment's thought will bring to mind scores of instances in which the recipient might well be held to be such "officer or employee," but in which the compensation does not come directly or indirectly from the state, otherwise than in the sense that he would not be in the enjoyment of it, were it not for the relation of officer or employee of the state which he enjoys.

[3] Here what the plaintiff receives comes wholly from the surety companies upon whose financial resources he reports. It is true the corporation does not pay it directly to him, but to the clerk of court, from whom he receives it. The moneys paid are never in any sense public moneys, but the moneys of the surety companies voluntarily paid by them to the clerk for the plaintiff. The payments are none the less voluntary, although paid to comply with a condition of their acceptance as sureties without further inquiry by the court. The latter could doubtless appoint an examiner or master to make the proper investigation whenever a surety was offered, and could impose the costs of it upon the party. The surety company voluntarily assumes the payment called for by the rule of court as a practical substitute for the costs which might otherwise be incurred. The conclusion already stated we think follows.

Our attention has been directed to a number of administrative rulings. These have not always been consistent. There is nothing surprising in this, because such rulings are made upon fact showings, which are not always the same. The cases to which we have been likewise referred are not in conflict with the ruling made, if the differences in the fact situations or in the questions presented are kept in mind. Among them are the following: United States v. Germaine, 99 U. S. 508, 25 L. Ed. 482; Fleming v. Bowers (D. C.) 11 F.(2d) 789; New York Trust Co. v. U. S. (Ct. Cl., unreported).

We do not have access to the record, to learn the appropriate order to be made, but have ruled the point of law raised. Counsel doubtless will be able to agree upon a formal order; failing this, one will be made, the court retaining jurisdiction for this purpose.