**UNITED STATES v. MacEVOY et al.**
(two cases).

Nos. 2438c, 2439c.

District Court, D. New Jersey.

Dec. 5, 1944.

Thorn Lord, U. S. Atty., of Trenton, N. J., Tom C. Clark, Asst. Atty. Gen., and Raymond P. Whearty, Sp. Asst. to Atty. Gen., for plaintiff.

John Milton, of Jersey City, N. J., and Frederic M. P. Pearse, of Newark, N. J., for defendants Clifford F. MacEvoy, Rockledge Inc., Park Avenue Storage Co., and Clifford F. MacEvoy Co.

MEANEY, District Judge.

The defendants herein have been indicted by the Grand Jury of the United States for the District of New Jersey for an alleged violation of the provisions of Title 18 U.S. C.A., §§ 80 and 550.

A motion has been made to quash the indictments on the ground that they fail to charge a crime against the United States under any Federal Statute.

The gravamen of the complaint is contained substantially in the charge that the defendants "unlawfully, wilfully and knowingly did make and cause to be made and cause to be presented for payment and approval to the Federal Works Agency and to the Treasury Department of the United States, a certain claim upon and against the United States in the sum of," monies mentioned in each of the claims set forth, the defendants well knowing that the claim was false insofar as certain charges are concerned.

The several counts in both indictments charge that Clifford F. MacEvoy was president and principal stockholder of the Clifford F. MacEvoy Company, and was in complete control of that company as he was of Rockledge, Inc., and Park Avenue Storage Company; that the defendant, Arthur E. Sankey, was employed by the Federal Works Agency as Project Engineer at the Winfield Housing Project, near Linden, New Jersey, and that it was his duty to, and that he did, approve the various purchasing orders of Clifford F. MacEvoy Company, the contractor holding the contract for construction of the Winfield Housing Project, the contract having been made with the United States of America through the Special Assistant to the Administrator of the Federal Works Agency.

It is further charged that under the terms of certain general conditions of the Federal Works Agency and Public Building Administration, incorporated in and made part of the contract, the contractor was bound by the schedule of charges for the

rental of certain equipment entitled "Contractors' Equipment Rental Schedule," which described various rental for various equipment, depending on whether or not the equipment belonged to the contractor or belonged to a third party. If it was the contractor's the rental was less; if it was a third party's, it was more.

It is charged further that the vouchers or claims were false, in that in indictment 2438c the contractor claimed that the particular equipment mentioned in each count belonged to Rockledge, Inc., whereas in truth and fact it belonged to Clifford F. MacEvoy Company.

The same situation prevails in indictment 2439c except that the vouchers show the rental of equipment from Park Avenue Storage Company, which it is alleged was not a bona fide third party.

█ Counsel for the defendants contend that in view of the recitals in the indictment, it is patent that the commission of no crime is alleged since it does not charge that the bills were presented to any "person or officer" as required by the statute.

In determining whether or not the statute is applicable to the instant situation, it is necessary to determine just what the language of the cited section 80 embraces. It reads as follows:

"Whoever shall make or cause to be made or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, or any department thereof, or any corporation in which the United States of America is a stockholder, any claim upon or against the Government of the United States, or any department or officer thereof, or any corporation in which the United States of America is a stockholder, knowing such claim to be false, fictitious, or fraudulent * * * shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

Both counsel for the defendants and counsel for the Government insist that the words of the statute are plain and capable of but one sensible, logical, interpretation. And yet, they arrive at inconsistent interpretations of these allegedly unequivocal words, each of them recognizing that since the statute defines a crime, it must be strictly construed. Counsel for the defendants contend that the words "or any depart-. ment thereof" relate to and modify the immediately preceding phrase "service of the United States" and that therefore unless there be presentation of the claim to any "person or officer" of a department of the United States, under the facts in the instant case, the indictment fails to present a charge of crime.

The cases cited by counsel for the defendants do not seem to be as elucidative as counsel would suggest.

There has been presented no decision which clarifies the situation to the degree urged by the defense.

Reverting to the language of section 80 of Title 18, U.S.C.A., it would seem that if the defendants' contention were to prevail, that the sense of the paragraph would be stated somewhat in the following language: Whoever shall make or cause to be made or present or cause to be presented for payment or approval, to or by any person or officer of the civil, military, or naval service of the United States, or *to or by any person or officer in the civil, military or naval service* of any department of the United States, or *to or by any person or officer of the civil, military or naval service* of any corporation in which the United States of America is a stockholder, &c. Reduced to this form, as it must be to sustain the contention of the defendants, the illogicality of defendants' contention would seem to be apparent because the language following the words "service of the United States" would be repetitive at best, and futile and uncertain at worst.

In Roberts v. United States, 137 F.2d 412, the Circuit Court of Appeals for the Fourth Circuit, passing upon the validity of an indictment which alleged that the false claims involved were presented "to the Department of the Navy of the United States, through the Naval Training Station of the United States," held that the indictment was clearly sufficient under the statute and that such wording set forth a general charge substantially in the words of the statute. The question had been raised as to the failure of the indictment to allege the particular officer to whom the claims were presented and his authority to approve and pay.

I am therefore of the opinion that the proper construction of the statute would justify the statement that presentation of a claim for payment or approval to any department of the United States is within the purview of the act.

It is true that statutes affecting crimes should be construed strictly, but at the same time the evident intent of the Legislature must not be thwarted arbitrarily by forced construction of the language, nor must the evident will of Congress be upset by declaring words used in a criminal statute to be mere surplusage and without meaning, when an effective significance can be given to words of plain intent and meaning, although the reverse situation might conceivably be used to the advantage of one accused of crime.

Courts are never justified in attempting to legislate either by adding to the words of the statute or depriving a statute of a consistent and plain interpretation of words used to carry out an evident intent of Congress.

The original act, known as Revised Statutes, § 5438, was amended from time to time until it appeared in its final form. The various changes indicate the intent of Congress to protect the United States from fraudulent, fictitious or false claims, and it is my thought that my findings are completely in accord with both the intent of Congress and the language it used to effectuate that intent.

I might further call attention to the wording of Section 80 cited above, where a distinction is made between Department of the United States and an officer thereof, in the same clause, namely, the words: "any claim upon or against the Government of the United States, or *any department or officer thereof*, or any corporation in which the United States of America is a stockholder * * *." (Italics mine.) This would indicate that there was present in the minds of the enacting legislators a distinction between the department as such, and the officer thereof as such, which we must presume to have continued through the framing of the whole section.

Now comes the bifurcated question as to whether presentation to the Federal Works Agency constitutes presentation to a "department" of the United States, and whether the alleged presentation of false claims to the Treasury Department of the United States constitutes such illegal presentation as is intended by the statute.

I shall first consider whether presentation to the Treasury Department of the false claims alleged in the present indictment would constitute a crime under this particular statute.

The claims which are the basis of the charges contained in the indictments were claims against the Federal Works Agency, and not against the Department of the Treasury, as such. Payment, obviously, would be made of course by the Treasury of the United States, but the claim in the first instance was not chargeable against the Treasury Department.

If the work had been done on a Customs House or a Post Office, the claim would in all probability be filed against the Treasury Department, which would have supervision of the erection and construction of such building. However, federal housing projects were completely without the scope of the direct supervision of the Treasury Department and it would therefore appear that filing of false claims against the Treasury Department, under the circumstances existent in the present case, would not be controlled by the statute.

While the statute makes it an offense to present a false voucher to any department of the United States, by analogy with the accepted theory of the case of United States v. Christopherson, D. C., 261 F. 225, it would seem but reasonable that such department must be one which would be authorized to approve, audit and pay the claim. The court will take judicial notice that the Federal Works Agency is not a subdivision of the Treasury. Government's cases are not in point in view of this conclusion.

There remains to be considered the issue of whether or not the Federal Works Agency is a department of the United States such as would be included in the comprehension of Section 80, Title 18, hereinbefore referred to.

The solution of that issue depends on what signification must be given to the word "department" in the light of its general acceptation and the intent of Congress in amending the original act. In a limited meaning, department has been defined as "a sub-division of governmental organization, as the executive, judicial and the legislative departments." In a further limited sense, the word has been confined to what Webster calls "the subordinate departments of the executive department," listing the Department of State, Navy, etc. However, the word itself has a wider implication and connotes a part or portion of something extensive or complete, a subdivision. And unless there be something in the context

of the Act to indicate acceptance of one of the limited definitions, that construction of the term must be given which tends to fulfil the express purpose of the Act as finally amended. There can be little question that Congress was aiming at the denunciation as a crime, of attempts to defraud the United States by presentation of false claims. In its original form, it was found capable of misunderstanding and divergence of opinion. Therefore Congress broadened the scope of the Act by what it hoped would prove deoppilative amendments. There is nothing by way of modifying words in the statute as amended to indicate that it meant to give narrow and restricted extension to the term used in the amending clause.

When Congress meant to use the word "department" in its narrow application, it sufficiently expressed that intention and recognized the existence of the broader definition either expressly as in Title 5 U.S.C.A. § 2, or by manifest implication from the context. The decision of the Supreme Court in United States v. Germaine, 99 U.S. 508, 510, 25 L.Ed. 482, has reference to a situation begotten by reference to the Constitutional method of appointment of certain officers of the government, who were to be designated by heads of departments. Mention of this power of appointment is made under "powers of the President," Article II, Section II, clause 2, and as Justice Miller said for the Supreme Court in that case:

"That instrument was intended to inaugurate a new system of government, and the departments to which it referred were not then in existence. The clause we have cited is to be found in the article relating to the Executive, and the word as there used has reference to the subdivision of the power of the Executive into departments, for the more convenient exercise of that power."

In giving its definition of the word department, the Supreme Court in the Germaine case recognized that this definition was dependent upon the context and associations in which the word department found itself.

In the case of United States Shipping Board Emergency Fleet Corporation v. Western Union Telegraph Company, 275 U.S. 415, 48 S.Ct. 198, 200, 72 L.Ed. 345, Mr. Justice Brandeis speaking for the Supreme Court cites Section 2 of the Post Roads Act, 14 Stat. 221, Revised Statutes, sections 5263–5266, 47 U.S.C.A. §§ 1-3, 6, which required:

"That telegraphic communications between the several departments of the government of the United States and their officers and agents shall, in their transmission over the lines of any of said companies, have priority over all other business, and shall be sent at rates to be annually fixed by the Postmaster-General."

In discussing whether or not the Fleet Corporation was a department of the United States within the meaning of the Post Roads Act, the court speaks of "Great Executive Departments" and then refers to "minor independent departments," among which it includes Civil Service Commission, Interstate Commerce Commission, Bureau of American Republics, Panama Canal, Federal Reserve Board, Federal Trade Commission, and many others.

Recognizing the distinction between departments of the government of the United States, and instrumentalities in which the government has an interest, this decision offers gravific argument for the interpretation herein given to the final amendment to the act upon which these indictments are based, since Congress would seem to have recognized the distinction made by the court between departments of the government and corporations in which the United States of America is a stockholder.

In United States v. Bowman, 260 U.S. 94, 43 S.Ct. 39, 42, 67 L.Ed. 149, in referring to the language of the statute so frequently referred to herein, and on which the questioned indictments are based, Mr. Chief Justice Taft speaking for the Supreme Court said:

"It is directed generally against whoever presents a false claim against the United States, knowing it to be such, to any officer of the civil, military or naval service or to any department thereof, or any corporation in which the United States is a stockholder. * * *."

It might be pertinent to note that further in the same opinion is included the following:

"As said in United States v. Lacher, 134 U.S. 624, 629, 10 S.Ct. 625, 627, 33 L.Ed. 1080, quoting with approval from Sedgwick, Statutory and Const. Law (2d Ed.) 282: 'Penal provisions, like all others, are to be fairly construed according to the legislative intent as expressed in the en-

actment.' They are not to be strained either way."

Paraphrasing the further language of the eminent Chief Justice, it needs no forced construction to interpret Title 18 U.S.C.A. § 80, as I have done.

Feeling as I do, that the indictments inform the defendants of the nature of the offenses charged and comply with all the requirements of a valid indictment, the motion of the defendants to quash said indictments is denied.

Let an order be submitted to this effect.