# Constitutionality of Bill Creating an Office of Congressional Legal Counsel

Congressional officers representing the combined power of both houses of Congress—in contrast to officers of either house—who perform significant governmental duties must be appointed as provided in the Appointments Clause of the Constitution.

The authority to bring a civil action requiring an officer or employee of the Executive Branch to act in accordance with the Constitution and laws of the United States is an exclusive executive function that must be exercised by an executive officer who must be appointed as provided for in the Appointments Clause and be subject to the President's unlimited removal power.

February 13, 1976

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL
CIVIL DIVISION

This is in response to your memorandum of January 12, 1976, in which you ask for information designed to assist you in complying with a request of the Subcommittee on Separation of Powers of the Senate Judiciary Committee for "Materials to be Submitted for the Record" in connection with your recent testimony before that Subcommittee. The two topics assigned to us are:

## I.

## Statements Submitted to Congress in Which the Department of Justice Opposed Congressional Attempts to Provide for a Counsel of Its Own

Since the Office of Legislative Affairs is the clearing house for reports submitted to Congress, we checked with that Office in order to answer this question. The Office of Legislative Affairs advised us that there have been only two instances in which statements relating to congressional attempts to provide for a counsel of its own were submitted to the Congress by the Department of Justice. They were your own statement of December 12, 1975, before the Senate Judiciary Committee, of which you, of course, are aware (*Representation of Congress and Congressional Interests in Court: Hearings Before the Subcomm. on Separation of Powers of the S. Comm. on the Judiciary*, 94th Cong. 4 (1976) (testimony of Rex. E. Lee, Assistant Attorney General, Civil Division)), and Assistant Attorney General Uhlmann's testimony of December 3, 1975, before the Senate Committee on Government Operations on S. 495, on pages 15–21 of the prepared text (*Watergate Reorganization and Reform Act of 1975: Hearings on S. 495 and S. 2036 Before the S. Comm. on Government Operations*, 94th Cong. pt. 2, at 15–21 (1976)).

This Office is not aware of any other instances in which the Department submitted to Congress any statements pertinent to this issue.

For your information, I may point out that this problem came up in connection with S. 1384, 90th Cong. (as introduced Mar. 23, 1967) ("To establish the Office of Legislative Attorney General"). The comments prepared in this Office, however, were not submitted to Congress. The late Professor Bickel, however, commented adversely on the proposal. *Separation of Powers: Hearings Before the Subcomm. on Separation of Powers of the S. Comm. on the Judiciary*, 90th Cong., pt. 1, at 248–50 (1967).

## II.

### Comments on the Constitutionality of S. 2731, 94th Cong., 1st Sess.

This rather complex bill would establish the Office of the Congressional Legal Counsel as an office of the Congress. S. 2731, 94th Cong. § 4(a)(1) (as introduced Dec. 2, 1975)). The Congressional Legal Counsel would be appointed jointly by the President pro tempore of the Senate and the Speaker of the House of Representatives, subject to approval by a concurrent resolution of the Senate and the House of Representatives. *Id.* The appointment would be for a term which would expire at the end of the Congress following the Congress in which the Congressional Legal Counsel was appointed; he could be removed by concurrent resolution for misconduct, incapacity, or incompetence. *Id.* § 4(a)(2).

Sections 5 and 6 would provide that the Congressional Legal Counsel shall prosecute and defend certain civil litigation in which Congress has an interest. Briefly those actions fall into the following categories:

> (a) Defense of either house or of congressional agencies, members, officers, or employees in any civil action in which such house, etc., is a party defendant in which there is placed in issue the validity of
>
> > (i) any proceeding of, or action taken, including any subpoena or order issued, by such house, joint committee, subcommittee, member, officer, employee, office, or agency; or
> >
> > (ii) any subpoena directed to such house, joint committee, committee, subcommittee, member, officer, employee, office, or agency (*id.* §§ 5(a)(1), 6(2)).
>
> (b) Prosecution of civil actions on behalf of Congress, etc.,
>
> > (i) to secure a declaratory judgment concerning the validity of any subpoena directed to, or subpoena or order issued by, Congress,

or such house, joint committee, committee, subcommittee, member, officer, employee, office, or agency (*id.* §§ 5(a)(2)(B); 6(1)); or

(ii) to require an officer or employee of the executive branch of the Government to act in accordance with the Constitution and laws of the United States (*id.* § 5(a)(2)(A)).

Under section 7(a), the Congressional Legal Counsel would make recommendations as to whether a civil action requiring an officer or employee of the Executive Branch to act in accordance with the Constitution and laws of the United States should be brought.

Section 8(a) would provide for the intervention or appearance as amicus curiae by the Congressional Legal Counsel in any legal action in which

(1) the constitutionality of any law of the United States is challenged and the United States is a party to such action, or a Member, officer, or employee of Congress does not consent to representation by the Congressional Legal Counsel under section 5 of this Act; and

(2) the powers and responsibilities of Congress under article I of the Constitution of the United States are placed in issue.

Section 9 would confer on the Congressional Legal Counsel certain advisory and consultative functions.

Section 10 would implement the responsibilities of the Congressional Legal Counsel under the preceding sections. Sections 11 and 12 deal with internal procedural matters.

Section 13 would provide for the supersedure of the Attorney General by the Congressional Legal Counsel if the latter undertakes any representational service. We assume that this provision is not intended to apply to proceedings under section 5(a)(2)(A), i.e., where the Congressional Legal Counsel institutes a civil action to require a officer of the Executive Branch "to act in accordance with the Constitution and laws of the United States." The remainder of the bill contains provisions mainly of a procedural nature. Section 15(f), however, would put on a permanent general basis Public Law 93-190, 87 Stat. 736 (1973), which authorized the Senate Select Committee on Presidential Campaign Activities to enforce its subpoenas or orders in judicial proceedings.

It may be briefly mentioned that the reference to section 6 or 7 on page 18, line 10 of the bill should probably be section 5 or 6.

In commenting on the constitutionality of the bill it must be recognized, first, that the bill represents a conscious effort to obviate certain constitutional obstacles inherent in other bills providing for a Congressional Legal Counsel by limiting his activities to the fields of civil litigation and the giving of advice and the making of

recommendations. And, second, that the pertinent law has been substantially clarified by the decision in *Buckley v. Valeo*, 424 U.S. 1 (1976), which was rendered after the introduction of the bill.

Provisions for a congressional officer charged on a permanent basis with the function of representing Congress, its agencies, members and employees in judicial proceedings, raise two questions: (a) whether the appointment of a joint congressional officer performing only legislative functions must comply with Article II, Section 2, Clause 2 of the Constitution, and (b) whether, assuming that the answer to (a) is no, the functions of the counsel envisaged in the bill are sufficiently of an executive nature to require his appointment pursuant to Article II, Section 2, Clause 2 for that reason. Further serious problems are raised by section 5(a)(2)(A) which would confer upon the Congressional Legal Counsel the power to bring a civil action against an executive officer in order to require him "to act in accordance with the Constitution and the laws of the United States."

1. Article II, Section 2, Clause 2 of the Constitution provides that the President

> shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

It will be noted that this constitutional provision is not limited to executive officers. Judicial officers are appointed pursuant to it, and, as will be presently shown, also a number of important congressional officers.

*United States v. Hartwell* defines an office as a public station or employment which "embraces the ideas of tenure, duration, emolument, and duties," to distinguish it from relationships of a purely occasional or contractual nature. 73 U.S. (6 Wall.) 385, 393 (1867). The elements of tenure, duration, emoluments, and duties relating to the office of the Congressional Legal Counsel are spelled out in detail in the bill, as has been shown above.[1]

In *United States v. Germaine*, the Court held:

> That all persons who can be said to hold an office under the government about to be established under the Constitution were intended to be inclined within one or the other of these modes of appointment there can be but little doubt.

---

[1] Since the definition of office includes the elements of duration and tenure, the subsequent discussion is not concerned with the representation of Congress, etc., by counsel retained on a case by case basis in the rare situations in which the Executive Branch is unable to represent it.

99 U.S. 508, 510 (1878).

And most recently the Court amplified on this in *Buckley v. Valeo*:

> We think its fair import is that any appointee exercising significant authority pursuant to the laws of the United States is an "Officer of the United States," and must, therefore, be appointed in the manner prescribed by § 2, cl. 2, of that Article.

424 U.S at 126.

The functions to be conferred on the Congressional Legal Counsel clearly vest in him significant authority under the laws of the United States; they are not limited to an internal advisory nature. The provisions for his appointment therefore are unconstitutional unless the Constitution "otherwise provides" for his appointment. In our view there is no such alternative provision for his appointment.

Article I, Sections 2 and 3 of the Constitution provide that the House of Representatives and the Senate choose their respective officers. There is, however, no provision in the Constitution "otherwise providing" for the appointment of officers serving Congress as such rather than its components.

*Buckley v. Valeo* demonstrates that the failure of the Constitution to authorize Congress to appoint officers who are not officers of the respective houses but of Congress as a whole was no oversight. 424 U.S. at 124–31. This conclusion is supported by the consideration that the Constitutional Convention deliberately split the Legislative Branch into two houses lest it overwhelm the other two branches of the government. As James Madison stated in *The Federalist* No. 51:

> In republican government, the legislative authority necessarily predominates. The remedy for this inconveniency is to divide the legislature into different branches; and to render them, by different modes of election and different principles of action, *as little connected with each other* as the nature of their common functions and their common dependence on the society will admit. . . . [T]he weight of the legislative authority requires that it should be thus divided . . . .

*Id.* at 322 (Clinton Rossiter ed., 1961) (emphasis added). John Adams' three volumes in the *Defence of the Constitutions of Government of the United States of America* (1794), based on a formidable amount of historical research, were compiled in order to establish the proposition that, in order to be viable, a republican form of government must be based not only on the principle of the separation of powers but also on that of bicameralism. Hence, it must be concluded that the Constitutional Convention deliberately denied Congress the power to appoint joint congressional officers, in order to hold "connections" between the two Houses of Congress to a minimum. Such officers, therefore, like all other officers of the United States, have to be appointed pursuant to Article II, Section 2 of the Constitution.

Legislative precedent supports this conclusion. The principal joint congressional officers have been traditionally appointed in this manner: the Comptroller General (31 U.S.C. § 42 (Supp. III 1973)); the Librarian of Congress (2 U.S.C. § 136 (Supp. III 1973)); and the Public Printer (44 U.S.C. § 301 (Supp. III 1973)) are appointed by the President by and with the advice and consent of the Senate; the Architect of the Capitol is appointed by the President alone (40 U.S.C. § 162 (1970)). Significantly, the legislative counsel appointed by the President pro tempore of the Senate and by the Speaker of the House of Representatives, respectively (2 U.S.C. § 272 (1970)), are officers of the house to which they have been appointed and not officers of Congress at large (2 U.S.C. §§ 271, 281 (1970)).

This is not to say that there may not be some congressional officials—such as joint committee staffs—who are not appointed pursuant to Article II, Section 2, Clause 2. But their functions are purely internal and advisory; they do not carry out any significant authority outside the limits of the Capitol.

It is therefore concluded that congressional officers—in contrast to officers of either house—who perform significant governmental duties must be appointed as provided in Article II, Section 2 of the Constitution. In other words, if Congress provides for an officer representing the combined power of both houses of Congress, it must pay the price by giving the President the authority of selection.

2. This portion of the discussion is based on the assumption *arguendo* that congressional officers, even if they do perform significant governmental functions, need not be appointed according to the procedures set forth in Article II, Section 2, Clause 2 of the Constitution provided their functions are not of an executive or administrative nature.

The principal pertinent functions of the Congressional Legal Counsel would lie in the field of litigation. The kind of proceedings in which he would be involved fall into three categories:

> i. Generally, to defend Congress, its agencies, members and employees in cases involving the validity of congressional action, congressional subpoenas, or orders issued by or directed against Congress.

> ii. To bring civil actions for declaratory relief concerning the validity of a subpoena issued by or directed against Congress or to enforce any congressional subpoena or order.

> iii. To bring civil actions requiring an officer or employee of the Executive Branch to act in accordance with the Constitution and laws of the United States.

The last category quite obviously and uncontrovertibly involves an exclusively executive function. To require an officer to act in accordance with the Constitution

and laws of the United States is nothing but a paraphrase of the constitutional text to "take Care that the Laws be faithfully executed." That responsibility is vested, pursuant to Article II, Section 3 of the Constitution, in the President and not in Congress. An officer whose duty it is to compel action in accordance with the requirements of the Constitution and laws of the United States, therefore, is an executive officer who must be appointed as provided for in Article II, Section 2, Clause 2 of the Constitution and be subject to the President's unlimited removal power. *Buckley v. Valeo*, 424 U.S. at 134–41.

In view of this recent pertinent ruling in *Buckley v. Valeo*, we do not consider it necessary to discuss here the alternative consideration whether Congress or a member has standing in court to require an officer to act in accordance with the Constitution and laws of the United States. We merely refer to the recent holding of the U.S. Court of Appeals for the Fourth Circuit in *Harrington v. Schlesinger*, decided on October 8, 1975:

> A legislator may sue to prevent dilution of his voting power in the legislature. In *Kennedy v. Sampson*, D.C. Cir., 511 F.2d 430 [(1974)], the Court decided that a Senator had standing to challenge a President's "pocket veto" of a bill for which he had voted. The Senator was challenging the diminution of his voting power in the legislative process. By analogy, the four congressmen in this action claim that they have an interest in ensuring enforcement of laws for which they voted. Once a bill has become law, however, their interest is indistinguishable from that of any other citizen. They cannot claim dilution of their legislative voting power because the legislation they favored became law.
>
> . . . .
>
> . . . The plaintiffs' status as congressmen does not give them standing to sue for a declaration that Executive activities are illegal. The congressmen's interest seems little different from that of any citizen who might find a court's advice useful in casting his votes in presidential or congressional elections. In both instances the interest is too generalized to provide a basis for standing.
>
> . . . .
>
> While we hold that none of the plaintiffs has standing to seek a judicial resolution of the controversy, they are not without a remedy, for the controversy is subject to legislative resolution. If there is a difference between a majority of the members of both houses of Congress and the President as to the interpretation and application of the statutes, the Congress has the resources through its committees to

ascertain the facts. With the facts before it, it may tighten the statutory restrictions, if that be the congressional will. The fact that the Congress has done nothing suggests that the Executive's interpretation of the statutes is in agreement with the congressional intent, but that is an issue in this case which we do not reach.

528 F.2d 455, 459 (4th Cir. 1975) (footnote omitted).

In other words, while a congressman may have standing to determine whether or not legislation which had passed both Houses of Congress has become law (*Kennedy v. Sampson*, 511 F.2d 430 (D.C. Cir. 1974)),[*] once a statute has been approved by the President, the congressional power over it becomes *functus officio*. *See* Cong. Globe, 39th Cong., 1st Sess. 186 (Jan. 11, 1866) (statement of Sen. Davis). In this connection it should be remembered that "standing to sue" is a constitutional requirement flowing from the limitation of the jurisdiction of the federal courts to cases and controversies in Article III, Section 2, Clause 1 of the Constitution. It therefore cannot be waived by statute, which is apparently what section 14(a) of the bill seeks to accomplish.

Portions of the litigating functions conferred upon the Congressional Legal Counsel in categories (i) and (ii) described above—notably the defense of actions against individual congressmen with respect to the performance of their legislative functions, and the defense or prosecution of suits relating to congressional subpoenas—are less exclusively executive in nature; it is our view, however, that the lodging of any of them in a non-executive officer is subject to serious constitutional doubt. Litigation is basically an executive function. This conclusion is supported by section 14(c) of the bill, which would vest in the Congressional Legal Counsel the powers conferred by law upon the Attorney General, which powers, of course, are of a preeminently executive nature. It is also significant that the responsibility of defending congressional officers has been vested in the Attorney General for more than a century. *See* 2 U.S.C. § 118 (1970) (derived from Act of Mar. 3, 1875, ch. 130, § 8, 18 Stat. 371, 401). The Supreme Court suggested in *Buckley v. Valeo* that legislative power may come to an end at the courtroom door: "[The] discretionary power to seek judicial relief . . . cannot possibly be regarded as merely in aid of the legislative function of Congress." 424 U.S. at 138. *Kennedy v. Sampson* is of course not in point, since that involved the standing of individual members of Congress rather than the power of the Congress, as an institution, to represent individual members, or the Congress itself, in litigation.

---

[*] Editor's Note: In *Chenoweth v. Clinton*, 181 F.3d 112, 115–17 (D.C. Cir. 1999), the Court of Appeals expressed doubt about the continuing viability of *Kennedy v. Sampson* in light of *Raines v. Byrd*, 521 U.S. 811 (1997).

The preceding discussion encompasses the constitutional objections to the bill which appear to us to be the most serious ones. While we realize that there are others lurking in it, space and time preclude us from dealing with all of them.

For the above reasons, it is our conclusion that the bill is subject to substantial constitutional infirmities.

ANTONIN SCALIA
*Assistant Attorney General*
*Office of Legal Counsel*
