# Constitutional Limits on "Contracting Out" Department of Justice Functions under OMB Circular A-76

Litigation on behalf of the United States must be conducted or closely supervised by officers of the United States who have been appointed in conformity with the Appointments Clause and who are under the supervision of the Attorney General and the President.*

Certain program analyst, program monitor and historical research support positions in the Department of Justice do not involve governmental authority that can only be exercised by officers of the United States, but instead involve information gathering and reporting duties which may constitutionally be performed by private parties on a contract basis.

April 27, 1990

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
JUSTICE MANAGEMENT DIVISION

You have asked for our advice concerning the constitutional limitations on employing private contractors or individuals to perform certain tasks now performed by Department of Justice employees. First, you have asked us to explore any constitutional questions raised by the contracting out of forty-eight program analyst and program manager positions responsible for grant activities in the Office of Juvenile Justice and Delinquency Prevention ("OJJDP") and the Bureau of Justice Assistance ("BJA"). According to the Department's notice in the January 8, 1990 Commerce Business Daily, the functions performed by these positions include, but are not limited to, the following:

> First, the development, monitoring, and promotion of criminal justice (including drug prevention), juvenile justice and delinquency prevention, and related programs administered by State and local government agencies and other public and nonprofit

---

* Editor's note: The Office of Legal Counsel has disavowed the interpretation of the Appointments Clause set forth in this opinion. *See* Memorandum for the General Counsels of the Federal Government, from Walter Dellinger, Assistant Attorney General, *Re: The Constitutional Separation of Powers between the President and Congress,* at 20-21 n.53 (May 7, 1996).

organizations and institutions. (Congress sets certain require-
ments which these agencies must meet to qualify for federal
assistance.) Second, the provision of technical assistance to
State/local agencies in the form of short-term training on tech-
nical matters; dissemination of information (publications,
institutes, conferences, seminars, etc.); provision of information
to develop programs proposals; and preparation of program plans.

The notice also indicates that as a general matter, personnel holding these
positions are "responsible for administering the Federal part of the state or
local government's criminal justice or related programs." It is our under-
standing that employees in these positions presently monitor the programs
of state and nonprofit grantees and report on their compliance with federal
law and grant specifications. While these reports may form the basis for
federal funding decisions made by the Administrator of OJJDP or the Direc-
tor of BJA, no final decisions concerning program compliance or federal
funding can be made by any of the forty-eight employees who presently
occupy these positions. In addition, some of these employees may assist in
the formation of program initiatives within the framework of overall policy
goals set by the Administrator or the Director. Finally, some of these posi-
tions involve rendering non-binding advice to grantees concerning compliance
with federal law. However, all final decisions as to actual compliance with
federal law rest with the Administrator and the Director.

Second, you have asked our opinion concerning the contracting out of
historical research support positions in the Office of Special Investigations
("OSI") of the Criminal Division. The work contracted out in this context
would involve translation, research, and secretarial support services for OSI
historians investigating individuals suspected of having committed war crimes
during World War II.

Finally, you have expressed the need for more general guidance concern-
ing the constitutional limitations on the application of OMB Circular A-76
to Department of Justice functions.[1] In particular, you have inquired whether
we adhere to the views expressed in an opinion issued by this Office in 1983
that concludes that legislation providing for the use of private counsel to
represent the United States in debt collection actions is constitutionally prob-
lematic. *See* Memorandum to Deputy Attorney General Schmults, from
Assistant Attorney General Olson, Office of Legal Counsel (May 20, 1983).

---

[1] It appears to us that, absent presidential directives to the contrary, the Attorney General, as the head of
the Department of Justice and the President's chief legal advisor, has the final authority to determine
what positions within the Department of Justice are suitable to be considered for contracting out. *See* 5
U.S.C. § 301 ("The head of an Executive department . . . may prescribe regulations for the government
of his department, the conduct of its employees, the distribution and performance of its business, and
the custody, use, and preservation of its records, papers, and property."); *see also Olympic Fed. Sav. &
Loan Ass'n v. Office of Thrift Supervision*, 732 F. Supp. 1183, 1197 (D.D.C. 1990) ("[T]he Attorney
General is charged with responsibility for ensuring that only lawfully appointed officials act on behalf
of the United States, and consequently his interpretation of law on this subject is entitled to great
deference.").

## II. Analysis

The Constitution provides that "[t]he executive Power shall be vested in a President of the United States of America," and charges the President to "take Care that the Laws be faithfully executed." U.S. Const. art II, § 1, cl. 1; art. II, § 3. The very core of the executive power is the authority to pursue civil and criminal enforcement actions on behalf of the United States. *See Buckley v. Valeo*, 424 U.S. 1, 138 (1976) (per curiam) ("A lawsuit is the ultimate remedy for a breach of the law, and it is to the President . . . that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.'"); *Morrison v. Olson*, 487 U.S. 654, 691 (1988) ("no real dispute that the functions performed by the independent counsel are 'executive'"); *Springer v. Philippine Islands*, 277 U.S. 189, 202 (1928) (authority to enforce the laws and to appoint agents to do so are executive functions); *Myers v. United States*, 272 U.S. 52 (1926) (same). More generally, the executive power encompasses the interpretation and effectuation of all public law. *Bowsher v. Synar*, 478 U.S. 714, 733 (1986) ("Interpreting a law enacted by Congress to implement the legislative mandate is the very essence of 'execution' of the law.").

Obviously, the President alone cannot assure the faithful execution of the laws, and the Appointments Clause provides the constitutional mechanism for the delegation of the executive power to a corps of federal officers under the President's control to assist him in executing the laws. *See Myers*, 272 U.S. at 133 ("Each head of a department is and must be the President's *alter ego* in the matters of that department where the President is required by law to exercise authority."); *see also In re Neagle*, 135 U.S. 1, 63 (1890) ("The Constitution, section 3, Article 2, declares that the President 'shall take care that the  laws be faithfully executed,' and he is provided with the means of fulfilling this obligation by his authority to commission all the officers of the United States, and, by and with the advice and consent of the Senate, to appoint the most important of them and to fill vacancies.").

The Appointments Clause has both a "horizontal" and a "vertical" role to play in the separation of powers. Horizontally, it assures that executive power is not exercised by individuals appointed by, or subservient to, another branch of government. Vertically, the clause protects against the delegation of federal executive authority to private entities outside the constitutional framework.[2]

---

[2] The "vertical" protections of the Appointments Clause undergird the "horizontal" separation of powers. If the federal executive, legislative, and judicial powers could be granted to private entities to be wielded outside of constitutional strictures, the careful separation and intermingling of powers in the Constitution itself would be rendered a paper gesture. *Cf. Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50 (1982) (holding unconstitutional delegation of Article III duties to judges not appointed in conformity with the Appointments Clause); *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935) (federal legislative power may not be delegated to private parties). In addition, the "vertical" or "nondelegation" aspect of the Appointments Clause ensures that the President, through a unitary executive branch, can be held politically accountable for his execution of the laws.

The Appointments Clause, Article II, Section 2, Clause 2, provides that:

> [The President] shall nominate, and by and with the Advice
> and Consent of the Senate, shall appoint Ambassadors, other
> public Ministers and Consuls, Judges of the supreme Court,
> and all other Officers of the United States, whose Appoint-
> ments are not herein otherwise provided for, and which shall
> be established by Law; but the Congress may by Law vest the
> Appointment of such inferior Officers, as they think proper, in
> the President alone, in the Courts of Law, or in the Head of
> Departments.

In *Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam), the Supreme Court
examined the reach and requirements of the Appointments Clause in the
context of a constitutional challenge to the composition of, and authority
wielded by, the Federal Election Commission. The Commission was com-
posed of six voting members. The President *pro tempore* of the Senate, the
Speaker of the House, and the President each appointed two of the voting
members. None of the voting members of the Commission was nominated
by the President and confirmed by the Senate in accordance with the Ap-
pointments Clause.

By statute the Commission was charged with what the Supreme Court
viewed as three distinct types of tasks. First, the Commission was to gather,
organize, and make available to the public data concerning campaign spend-
ing and the administration of elections. The Court characterized these as
"recordkeeping, disclosure, and investigative functions." *Id.* at 110. Sec-
ond, the Commission was granted extensive power to issue binding
administrative rules, to "formulate general policy" concerning the enforce-
ment of applicable statutes, and to issue advisory opinions concerning election
law requirements. *Id.* at 110-11. Finally, the Commission was granted what
the Court characterized as "direct and wide ranging" enforcement powers.
*Id.* at 111. The Commission was authorized to institute civil actions to
enforce statutory requirements, to sue for the return of campaign "matching
funds" to the United States Treasury, and to issue "findings" of failure to file
expenditure reports. *Id.*

The Court began its analysis by rejecting the notion that the locution
"Officers of the United States" in the Appointments Clause was merely a
creature of "etiquette or protocol." Instead, the Court viewed the term as a
reference to those persons who may exercise "significant authority" under
the laws of the United States. The Court stated:

> We think that the term "Officers of the United States" as used
> in Art. II, defined to include "all persons who can be said to
> hold an office under the government" in *United States v.*

> *Germaine,* [99 U.S. 508 (1879)], is a term intended to have
> substantive meaning. We think its fair import is that any ap-
> pointee exercising significant authority pursuant to the laws
> of the United States is an "Officer of the United States," and
> must, therefore, be appointed in the manner prescribed by § 2,
> cl. 2 of that Article.

*Id.* at 125-26.

While the *Buckley* Court did not offer a comprehensive definition of what constitutes "significant authority" for purposes of the Appointments Clause, the Court's treatment of the various powers and duties conferred upon the Federal Election Commission offers significant guideposts. First, the Court made clear that "vesting in the Commission primary responsibility for con-ducting civil litigation in the courts of the United States for vindicating public rights, violate[s] Art. II, § 2, cl. 2, of the Constitution." *Id.* at 140. The Court indicated that "[s]uch functions may be discharged only by per-sons who are 'Officers of the United States' within the language of that section." *Id.*

The Court also held that the Commission's "broad administrative powers: rulemaking, advisory opinions, and determinations of eligibility for funds and even for federal elective office itself," constituted "significant authority" that could only be executed by properly appointed officers of the United States. *Id.* at 140, 141-42. The Court indicated that "each of these functions also represents the performance of a significant governmental duty exercised pursuant to a public law." *Id.* at 141.[3]

Finally, the Court held that the Commission, as then constituted, could exercise powers of "an investigative and informative nature, falling in the same general category as those powers which Congress might delegate to one of its own committees." *Id.* at 137. These information gathering duties were, in the Court's view, "sufficiently removed from the administration and enforcement of the public law as to permit their being performed by persons not 'Officers of the United States.'" *Id.* at 139.[4]

---

[3] It should be noted that the "advisory" opinions of the Federal Election Commission were so in name only. The statute provided that any individual who acted in good faith on the basis of such an opinion "shall be presumed to be in compliance" with federal election law "notwithstanding any other provision of law." *Buckley,* 424 U.S. at 110-11.

[4] The constitutional concerns expressed by the *Buckley* Court are themselves reflected in OMB Cir-cular A-76. The Circular recognizes that "[c]ertain functions are inherently Governmental in nature," defined as functions "which require either the exercise of discretion in applying Government authority or the use of value judgment in making decisions for the Government." OMB Circular No. A-76 §§ 5b, 6e (Rev. Aug. 4, 1983). Listed examples include "criminal investigations, prosecutions and other judicial functions; management of Government programs requiring value judgments," and "selection of program priorities." *Id.* § 6e(1). The Circular indicates that it is the policy of the United States to "[r]etain Governmental [f]unctions [i]n-house," and that these functions "shall be performed by Gov-ernment employees." *Id.* § 5(b).

*Buckley* thus makes it clear that the exercise of rulemaking or policymaking functions requires proper authority under the Appointments Clause. *See also Olympic Fed. Sav. & Loan Ass'n. v. Office of Thrift Supervision*, 732 F. Supp. 1183 (D.D.C. 1990) (Director of the Office of Thrift Supervision exercises significant rulemaking and regulatory authority and thus under *Buckley* must be appointed in accordance with the Appointments Clause). On the other hand, information gathering, investigative, and advisory functions that do not involve final actions affecting third party rights may be performed by private parties or "independent" contractors. Similarly, purely ministerial and internal functions, such as building security, mail operations, and physical plant maintenance, which neither affect the legal rights of third parties outside the Government nor involve the exercise of significant policymaking authority may be performed by persons who are not federal officers or employees.

Applying these criteria to the two types of functions at issue here, we conclude that both the forty-eight program analyst and program monitor positions and the historical research support positions do not involve the exercise of "significant authority pursuant to the laws of the United States," as that phrase is used in *Buckley*. We emphasize that under *Buckley* private individuals may not determine the policy of the United States, or interpret and apply federal law in any way that binds the United States or affects the legal rights of third parties. Nor can any private individuals make funding decisions. *See* Letter for Marshall J. Breger, Chairman of the Administrative Conference of the United States, from Deputy Attorney General Burns at 4 (Nov. 10, 1986) ("Burns Letter") ("[W]e do not believe that individuals who are not officers of the government may commit or dispose of the property of the United States."). Properly appointed federal officials must maintain both legal and effective control over the direction of United States policy in this area as well as control over the allocation of federal funds.

As we understand it, however, the program analysts and monitors involved here simply study and make recommendations concerning the compliance of various state and local programs with federal funding requirements. While the employees who presently occupy these positions may advise and assist in policy formation, they cannot determine the final policy of the Department of Justice. Nor can these employees take any independent action on behalf of the United States affecting the rights of grantees. The prior opinions of this Office indicate that such "study and report" functions need not be performed by officers of the United States within the meaning of the Appointments Clause. *See, e.g.*, Memorandum for the Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Enrolled Bill S. 118, "To Provide for the Establishment of a Commission on the Bicentennial of the Constitution"* (Sept. 29, 1983) (Commission on the Bicentennial of the Constitution); Memorandum for Robert A. McConnell, Assistant Attorney General, Office of Legal Affairs, from Ralph W. Tarr, Deputy Assistant Attorney General, Office of Legal

Counsel, *Re: Enrolled Bill H.R. 1900* (Apr. 6, 1983).[5]

We also conclude that under *Buckley*, the duties of the historical research support positions may be performed by private persons. As a general matter, the investigation of criminal activity is an inherently governmental function performed exclusively by federal officers within the executive branch. Thus, we have no doubt that the authority to seek and execute search warrants, or to make arrests in the name of the United States is "significant authority" under *Buckley*. However, as we understand it, the historical research support personnel at issue here conduct background research and translation under the direction of the OSI historians who are properly appointed federal officers. These support personnel have no authority to take or authorize any legal action on behalf of the United States. Rather, they are simply charged with library research, translation, and collation of data. The functions to be performed by these individuals are more akin to those of an expert witness or consultant than they are to those of an FBI agent or a federal prosecutor. Such purely informational tasks may be performed by private individuals. *See* Memorandum for Richard C. Stiener, Chief, United States National Central Bureau, INTERPOL, from Larry Simms, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Establishment of an Interpol Subbureau in Puerto Rico* (Jan. 19, 1984) (information gathering and sharing functions of United States National Central Bureau of INTERPOL may be performed by persons not officers of the United States); *id.* at 12 n.11 (noting that "[e]ven private citizens can be an important source of information in the cause of law enforcement").

As a general matter, we also reaffirm the consistent position of this Office and the Department of Justice that the authority to direct litigation on behalf of the United States may not be vested in persons who are not officers of the United States appointed in the proper manner under Article II, Section 2, Clause 2 of the Constitution. *See, e.g.*, Brief for the United States as Amicus Curiae Supporting Appellees at 17, *Morrison v. Olson*, 487 U.S. 654 (1988) (No. 87-1279) ("[T]he duty of the President to 'take Care' means that *he*, with the help of the Senate in certain cases and acting on his own or through his heads of departments in others, is responsible and accountable to the people for selecting those persons who will exercise significant authority in executing the law."); Burns Letter at 2 ("[A]ny broad delegation of authority to private persons to conduct litigation in the name of the United States is likely to raise constitutional problems.").

This position is dictated both by the Supreme Court's decision in *Buckley* and by the broader separation of powers concerns underlying the Supreme Court's Appointments Clause jurisprudence. *See Buckley*, 424 U.S. at 139 ("[A]ll such suits [civil and criminal], so far as the interests of the United

---

[5] It is quite possible that OMB Circular A-76's definition of inherently governmental functions covers a wider range of functions than those that entail the exercise of "significant authority" under *Buckley*. This opinion does not address that issue.

States are concerned, are subject to the direction, and within the control of, the Attorney-General.") *(quoting The Confiscation Cases,* 74 U.S. (7 Wall.) 454, 458-59 (1869)); *see also United States v. San Jacinto Tin Co.,* 125 U.S. 273, 279 (1888) (the Attorney General "is undoubtedly the officer who has charge of the institution and conduct of the pleas of the United States, and of the litigation which is necessary to establish the rights of the government").[6] Thus, both the Appointments Clause and more general separation of powers concerns make it clear that the vesting of independent litigation authority in persons who are not federal officers or employees and who are not subject to executive branch discipline and control is unconstitutional. Were this not so, Congress could displace particular litigation authority from the executive branch and vest it in a private interest group or even in the House or Senate Counsel.

We note that the Department's support for the Debt Collection Act Amendments of 1986, Pub. L. No. 99-578, 100 Stat. 3305 (codified at 31 U.S.C. § 3718(b)), is fully consistent with this position. Those amendments authorized the Attorney General to retain private counsel to assist in the collection of non-tax debts owed to the United States. In signing that legislation into law, President Reagan stated:

> I am approving [the debt collection amendments] knowing that the Attorney General will take all steps necessary to ensure that any contact entered into with private counsel contains provisions requiring ongoing supervision of the private counsel so that all fundamental decisions, including whether to initiate litigation and whether to settle or compromise a claim, are executed by an officer of the United States, as required by the Constitution.

Pub. Papers of Ronald Reagan 1454 (1986).

The Department has issued regulations requiring the designation of "an Assistant U.S. Attorney to serve as the Contracting Officer's Technical Representative ("COTR") on the contracts with private debt collection lawyers

---

[6] We note that apart from the constitutional constraints examined in *Buckley* there is strong support in the statutes organizing the litigation authority of the executive branch for the proposition that only officers of the United States may conduct litigation in the name of the United States. Section 3106 of title 5 provides that, in general, agency and department heads "may not employ an attorney or counsel for the conduct of litigation in which the United States . . . is a party, or is interested, or for the securing of evidence therefor, but shall refer the matter to the Department of Justice." Within the Department of Justice itself, statutory structure reflects constitutional design. All litigation must be conducted by officers under the control and supervision of the Attorney General. *See, e.g.,* 28 U.S.C. § 515(b) ("Each attorney specially retained under the authority of the Department of Justice shall be commissioned as a special assistant to the Attorney General or special attorney, and shall take the oath required by law."); 28 U.S.C. § 516 ("[T]he conduct of litigation in which the United States . . . is a party . . . is reserved to officers of the Department of Justice, under the direction of the Attorney General."); *see also* 28 U.S.C. §§ 519, 547.

in their respective districts." 28 C.F.R. § 11.2 (1989). Under the regulations, these COTRs "will be responsible for assisting the contracting officer by supervising the work of the private counsel in their respective districts and providing necessary approvals with respect to the initiation or settlement of lawsuits or similar matters." *Id.* In addition, the Department's Request for Proposals ("RFP"), issued pursuant to the debt collection amendments, makes it clear that the COTR must review all major pleadings in debt collection actions before they are filed by the private attorney. The Department has indicated that it considers this kind of close supervision of private attorneys "necessary to meet constitutional concerns and preserve the authority of the Attorney General over litigation." Burns Letter at 3.

## Conclusion

In sum, we reaffirm the longstanding position of this Office and the Department that litigation on behalf of the United States must be conducted or closely supervised by properly appointed officers of the United States, officers who are themselves under the supervision of the Attorney General and the President. In addition, any significant policymaking duties under federal law or discretionary acts which affect the rights of citizens cannot be undertaken by private parties. On the other hand, advisory and information gathering functions, as well as purely ministerial and internal management matters, need not be performed by officers of the United States. We therefore conclude that the forty-eight program analyst and program monitor positions and the historical research support positions do not involve governmental authority that can only be exercised by officers, but instead involve information gathering and reporting duties which may constitutionally be performed by private parties on a contract basis.

WILLIAM P. BARR
*Assistant Attorney General*
*Office of Legal Counsel*

102