(Slip Opinion)

# The Test for Determining "Officer" Status Under the Appointments Clause

Individuals must be appointed pursuant to the Appointments Clause only if they (1) occupy a continuing position that is part of the federal government for constitutional purposes, and (2) exercise significant authority pursuant to the laws of the United States.

January 16, 2025

MEMORANDUM OPINION FOR THE GENERAL COUNSELS
OF THE EXECUTIVE BRANCH

Our Office has periodically provided general guidance to federal agencies regarding the scope of the Appointments Clause and the types of positions required to be filled according to its procedures. *See Officers of the United States Within the Meaning of the Appointments Clause*, 31 Op. O.L.C. 73 (2007) ("*Officers of the United States*"); *The Constitutional Separation of Powers Between the President and Congress*, 20 Op. O.L.C. 124, 139–65 (1996) ("*Separation of Powers*"). Since we last did so in 2007, however, the Supreme Court has issued several important decisions concerning which officials must be appointed as "Officers of the United States," including *Lucia v. Securities & Exchange Commission*, 585 U.S. 237 (2018). *See also Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010); *Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC*, 590 U.S. 448 (2020); *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021). This memorandum thus explains our Office's approach to the scope of the Appointments Clause in light of the Court's recent pronouncements and clarifies the relationship between our 1996 and 2007 opinions.

The Appointments Clause provides:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

1

U.S. Const. art. II, § 2, cl. 2. As laid out in more detail below, we read the Supreme Court's recent Appointments Clause decisions—and, in particular, *Lucia*—as establishing a "basic framework for distinguishing between officers and employees" with two "requirement[s]": to be an officer, an individual must (1) "occupy a 'continuing' position" that is part of the federal government for constitutional purposes and (2) "exercis[e] significant authority pursuant to the laws of the United States." *Lucia*, 585 U.S. at 245 (first quoting *United States v. Germaine*, 99 U.S. 508, 511 (1879); and then quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976) (per curiam)). Moreover, as laid out below, we view the Office's longstanding Appointments Clause practice as consistent with these recent decisions. Indeed, despite certain differences in terminology and framing, we understand our 1996 and 2007 opinions, and the Department's Appointments Clause practice over the relevant period, to have taken a largely consistent approach. *See, e.g.*, Zachary S. Price, *Congress's Power over Military Offices*, 99 Tex. L. Rev. 491, 505 & n.64 (2021) (noting the similarity across *Lucia* and the Office's 1996 and 2007 opinions). We stand ready to provide advice on the application of this general guidance in the context of specific Appointments Clause matters—which often turn on the particulars of the position in question—as they arise.[1]

---

[1] This memorandum addresses only the conditions under which appointment consistent with the Appointments Clause is required. It does not take on the analytically distinct task of answering whether appointment consistent with one of the methods set forth in the Appointments Clause thereby makes an appointee an officer of the United States, a question that has not been a focus of this Office or the courts. Moreover, this memorandum does not address the distinction between principal and inferior officers, which the Supreme Court recently examined in *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021), and which also raises an analytically distinct set of questions. Finally, we note that, although the Constitution makes several references to the term "office" or "officer" outside the Appointments Clause, this memorandum does not address whether or to what extent any such references should be read consistent with the term "Officer[] of the United States" in the Appointments Clause. *See, e.g.*, *Special Government Employee Serving as Paid Consultant to Saudi Company*, 40 Op. O.L.C. 1, 4–5 (2016) (discussing the relationship between an "Office of Profit or Trust" under the Emoluments Clause and an "Officer" under the Appointments Clause).

## I.

Consistent with the Supreme Court's jurisprudence and our Office's longstanding approach, individuals are not required to be appointed pursuant to the Appointments Clause unless they "occupy a 'continuing' position" that is part of the federal government for constitutional purposes. *Lucia*, 585 U.S. at 245 (quoting *Germaine*, 99 U.S. at 511); *see also, e.g.*, *Dep't of Transp. v. Ass'n of Am. R.Rs.*, 575 U.S. 43, 54–55 (2015) (applying *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995)); *Free Enter. Fund*, 561 U.S. at 486 (same).

## A.

In *Lucia*, the Supreme Court stated that "an individual must occupy a 'continuing' position established by law to qualify as an officer." 585 U.S. at 245 (quoting *Germaine*, 99 U.S. at 511).[2] *Lucia* thus follows a long line of Supreme Court cases that have emphasized the importance of continuity under the Appointments Clause. *See Officers of the United States*, 31 Op. O.L.C. at 100–13 (conducting an extensive survey of the caselaw and practice concerning this factor). And, as explained below, the approach the Supreme Court has taken with respect to continuity in *Lucia* and other cases is consistent with this Office's.

In particular, as our prior opinions suggest, the Supreme Court's approach to assessing the "continuing" nature of a position has been a holistic one that considers both how long a position lasts as well as other attributes of the position that bear on continuity. *See id.* at 111–12; *Separation of Powers*, 20 Op. O.L.C. at 140–42. For instance, in *United States v. Germaine*, the Court emphasized "ideas of tenure [and] duration" in holding that certain civil surgeons hired by the government to perform

---

[2] The Appointments Clause refers to officers "whose Appointments are not herein otherwise provided for, and *which shall be established by Law*" and also authorizes Congress, "by Law," to vest the appointment of inferior officers in the President, courts of law, or heads of departments. U.S. Const. art. II, § 2, cl. 2 (emphasis added). We have discussed the significance of these phrases in our prior writings. *Officers of the United States*, 31 Op. O.L.C. at 118; *see also id.* at 117–19; *Applicability of Appointment Provisions of the Anti-Drug Abuse Act of 1988 to Incumbent Officeholders*, 12 Op. O.L.C. 286, 288 n.5 (1988). Because the Supreme Court has not focused on these phrases in the ensuing years, beyond the passing statement from *Lucia* quoted in the text, 585 U.S. at 245, we do not discuss them further here.

periodic physical examinations were employees, not officers, because their duties were "continuing and permanent, not occasional or temporary." 99 U.S. at 511–12. Likewise, in *United States v. Hartwell*, the Court explained that the term "office" "embraces the ideas of tenure, duration, emolument, and duties." 73 U.S. (6 Wall.) 385, 393 (1867). And in *Auffmordt v. Hedden*, the Court held that a merchant appraiser selected to resolve a particular customs dispute was not subject to the Appointments Clause because he was "selected for the special case"; his position was "without tenure, duration, continuing emolument, or continuous duties"; and he acted "only occasionally and temporarily." 137 U.S. 310, 326–27 (1890).

More recently, in *Freytag v. Commissioner*, the Court also engaged in a holistic review of the tenure and duration of the position in question—in that case, special trial judges appointed by the Chief Judge of the United States Tax Court—to determine that the judges were officers. In doing so, the Court contrasted the special trial judges with special masters, whom it implied were not officers of the United States because special masters "are hired . . . on a temporary, episodic basis" and their "duties and functions are not delineated in a statute." 501 U.S. 868, 881 (1991). And in *Lucia*, the Court similarly emphasized multiple factors bearing on continuity, holding that the Securities and Exchange Commission's administrative law judges occupied "continuing" positions because, "[f]ar from serving temporarily or episodically," the administrative law judges received "'career appointment[s]'" to a position with statutorily enshrined "'duties, salary, and means of appointment.'" 585 U.S. at 247–48 (first quoting 5 C.F.R. § 930.204(a) (2018); and then quoting *Freytag*, 501 U.S. at 878).

These cases show that, in determining whether an office is considered "continuing" for constitutional purposes, the Supreme Court has not looked to any single talismanic factor but has instead considered duration and other factors—an approach that accords with our Office's longstanding approach to the scope of the Appointments Clause.

Specifically, we have observed that a position is most clearly "continuing" if it is "permanent"—that is, if it is not "limited by time or by being of such a nature that it will terminate 'by the very fact of performance.'" *Officers of the United States*, 31 Op. O.L.C. at 100, 111 (quoting *Bunn v. People ex rel. Laflin*, 45 Ill. 397, 405 (1867)); *see also Separation of*

*Powers*, 20 Op. O.L.C. at 140. But consistent with the Court's precedents, this Office has also recognized that a position may still qualify as "continuing" even if it is nonpermanent—because of, for example, an express expiration date or the temporary nature of its duties. *See Officers of the United States*, 31 Op. O.L.C. at 112–13; *cf. Morrison v. Olson*, 487 U.S. 654, 671 n.12 (1988) (holding that an "independent counsel" under the Ethics in Government Act of 1978—though serving only for a finite period—was "an 'officer' of the United States"). And much like the Court, our Office has not identified a definitive test for how to distinguish a "continuing" nonpermanent position from one that is not. *Officers of the United States*, 31 Op. O.L.C. at 111–12 (noting that "[n]o definition of 'office' can be expected to harmonize all of the [Supreme Court and other] precedent[s] or answer all cases that may arise" concerning whether a position is "continuing" and that the "line" between a "continuing" position and one that is not "will not always be bright").

Rather, in 2007, our office identified three factors that it deemed important for identifying "continuing" nonpermanent positions: first, whether the position is non-personal, *id.* at 112—that is, whether a position's "duties continue, though the person [performing the duties] be changed," *United States v. Maurice*, 26 F. Cas. 1211, 1214 (Marshall, Circuit Justice, C.C.D. Va. 1823) (No. 15,747); second, whether the position is transient or fleeting—that is, the "more enduring [a position] is (or is likely to be), the more likely it is to be" a "continuing position" for Appointments Clause purposes, *Officers of the United States*, 31 Op. O.L.C. at 112; and, third, whether the duties of the position are "more than 'incidental'" to the operations of the federal government, *id.*

A few words are warranted about this third factor. Although the nineteenth century authorities from which our 2007 opinion derived this factor appear to use "incidental" in a temporal sense, as a synonym for "transient," "temporary," or "occasional," *see Ex parte Pool*, 4 Va. (2 Va. Cas.) 276, 279–80 (1821); *In re Oaths To Be Taken by Attorneys & Counsellors*, 20 Johns. 492, 493 (N.Y. Sup. Ct. 1823); *State ex rel. Att'y Gen. v. Kennon*, 7 Ohio St. 546, 556 (1857); *Bunn*, 45 Ill. at 405; Noah Webster, *An American Dictionary of the English Language* (1st ed. 1828), our 2007 opinion viewed the factor differently, as concerned with the "nature" of the position's duties, *Officers of the United States*, 31 Op. O.L.C. at 112–13 (noting that the factor "does not directly bear on [the] temporal aspect"

of continuance). In particular, the 2007 opinion explained that this factor's purpose was to help "ensure against evasion of the Appointments Clause," since "the position of Attorney General presumably still would be an office if Congress provided for it to expire each year but reauthorized it annually." *Id.* at 113. We agree that Congress could not evade the requirements of the Appointments Clause, under the guise of creating a "noncontinuous" position, by providing for a longstanding position in the federal government—particularly one with a historical pedigree of being treated as an office—to periodically expire and renew. And because history and practice carry significant weight in appointments matters, *see NLRB v. Noel Canning*, 573 U.S. 513, 524 (2014), we think it relevant in determining whether a newly created, temporary position is "continuing" to consider if the position's bundle of duties has historically been performed by an officer and whether such duties, although vested in a new, temporary position, would continue to be exercised by a single position in the government in a largely unbroken chain across time. We understand the "more than 'incidental'" factor in *Officers of the United States* to embody these considerations. 31 Op. O.L.C. at 112.

Further, as described above, we believe that these three factors remain relevant after *Lucia*, *see United States v. Donziger*, 38 F.4th 290, 296–98 (2d Cir. 2022) (citing *Officers of the United States* and applying these factors), although we stress that the factors are only guideposts and additional considerations potentially could be relevant depending on the particular position at issue. For example, our 2007 opinion stated that an "emolument" is not essential for officer status and that a position that otherwise qualifies as a constitutional office does not necessarily cease to do so because Congress has not provided for pay. *Officers of the United States*, 31 Op. O.L.C. at 119–20. While we still adhere to that position, the Supreme Court has continued to view a statutorily prescribed salary as relevant to whether a position is an "office" for Appointments Clause purposes. *Lucia*, 585 U.S. at 246–47 (quoting *Freytag*, 501 U.S. at 881).

## B.

By its terms, the Appointments Clause makes clear that it addresses only the power to fill positions that are offices "of the United States." U.S. Const. art. II, § 2, cl. 2. As this language indicates, the Clause only applies to individuals who occupy positions that are part of the federal

government for constitutional purposes. Although *Lucia* had no occasion to delve into this aspect of the Appointments Clause, as there was no dispute that the administrative law judges in that case were part of the federal government, *Lucia*'s description of the Appointments Clause test recognizes that the Clause is directed at the proper appointment of federal government officials. Prior statements by the Court confirm this view, as do our prior opinions, *see Officers of the United States*, 31 Op. O.L.C. at 99–100, 122; *Separation of Powers*, 20 Op. O.L.C. at 147–48, 148 n.70, even if we have not always made this factor a point of emphasis or been clear about its parameters. We therefore restate and clarify our Office's views here.

### 1.

The Supreme Court has had only limited occasion to engage with Appointments Clause challenges to individuals or entities that are arguably outside the federal government. Nonetheless, just as the Clause's text indicates that it applies only to positions that are part of the government for constitutional purposes, so too do several of the Court's decisions.

*Hartwell*, for example, described an office as a "*public station*, or employment, conferred by the appointment of government." 73 U.S. (6 Wall.) at 393 (emphasis added). The decision in *Aurelius* is also consistent with this description. In *Aurelius*, the Court affirmed that the Appointments Clause's use of the term "of the United States" suggests "a distinction between federal officers—officers exercising power of the National Government—and nonfederal officers—officers exercising power of some other government." 590 U.S. at 460. *Aurelius* held that members of a Puerto Rican financial oversight board were not subject to the Appointments Clause because they possessed "primarily local powers and duties" and thus were not officers "of the United States." *Id.* at 460, 464. Accordingly, the Court explained that in the case of federal territories like Puerto Rico, when Congress exercises its power to create structures of local government pursuant to the Territory Clause, U.S. Const. art. IV, § 3, cl. 2, or the District Clause, *id.* art. I, § 8, cl. 17, the officers of such governments "exercise power of the local government, not the Federal Government," and therefore are not officers "of the United States" to whom the Appointments Clause applies, *Aurelius*, 590 U.S. at 460.

The Court has thus made clear that, when a putatively non-federal position wields federal authority, the question is whether that position is part of the federal government for constitutional purposes; if not, then the position is not one to which the Clause applies. In the latter circumstance, any structural limitations on the exercise of such authority would turn not on the Appointments Clause, but whether there has been an unconstitutional delegation of federal authority to a private entity. Specifically, the Court has held that it is not an unconstitutional delegation of authority for Congress to assign a purely private entity responsibilities within a statutory scheme—even significant and continuing responsibilities—so long as the private entity "function[s] subordinately" to a federal agency. *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940). That rule is at odds with a view of the Appointments Clause that prevents Congress from assigning a private individual not appointed consistent with the Clause responsibilities in a statutory scheme subject to appropriate federal supervision. Indeed, the Fourth Circuit recently rejected—correctly, in our view—an Appointments Clause challenge to the participation of private entities in a federal administrative scheme on the ground that the Clause does not apply to non-federal entities, instead analyzing Congress's provision for such a role by private entities under the private-nondelegation doctrine. *See Kerpen v. Metro. Wash. Airports Auth.*, 907 F.3d 152, 160–63 (4th Cir. 2018) (explaining that the Appointments Clause has "little relevance when[] . . . the entity in question is not a federal one").

**2.**

We believe that our Office's 1996 and 2007 writings on this issue are largely consistent both with each other and with the Supreme Court's view that the Appointments Clause only applies to persons and entities that are part of the federal government for constitutional purposes. To be sure, our 2007 opinion suggested that the Office had fallen into "error" in 1996 by "concluding that the Appointments Clause does not apply to persons who are not employees of the federal government," *Officers of the United States*, 31 Op. O.L.C. at 121, and at least one published opinion has viewed our 2007 and 1996 writings as disagreeing on this point, *see Appointment and Removal of Federal Reserve Bank Members of the Federal Open Market Committee*, 43 Op. O.L.C. __, at *7–8 (Oct. 23, 2019).

But there is less disagreement than first appears. Our 1996 opinion did not conclude that the Appointments Clause is inapplicable any time there is a formal argument that a position is outside the federal government; rather, the opinion recognized that whether a position is part of the federal government for constitutional purposes—such that the Appointments Clause applies—turns not on the label Congress assigns the position but rather on the functional considerations the Supreme Court identified in *Lebron* and its progeny. *Separation of Powers*, 20 Op. O.L.C. at 147–48. Our 2007 opinion takes a similar approach to the scope of the federal government for Appointments Clause purposes, acknowledging that our 1996 opinion "went far toward" adopting the correct approach "when it recognized the relevance to Appointments Clause analysis of *Lebron*." *Officers of the United States*, 31 Op. O.L.C. at 121–22. Thus, we view the overall approach of these opinions as, at bottom, consistent. Further, for the reasons laid out below, we believe the Supreme Court's subsequent decisions in *Association of American Railroads* and *Free Enterprise Fund* indicate that our Office was correct in identifying *Lebron* and its progeny as guiding the relevant inquiry.

We begin with *Lebron*, where the Court considered whether the First Amendment constrained the ability of Amtrak to limit private speech—which the Court concluded turned on whether Amtrak was a private corporation or part of the government. Amtrak is chartered by Congress and its organic statutes at the relevant time expressly provided that Amtrak "shall be operated and managed as a for profit corporation," 45 U.S.C. § 541 (repealed 1994), and "will not be an agency or establishment of the United States Government," Rail Passenger Service Act of 1970, Pub. L. No. 91-518, § 301, 84 Stat. 1327, 1330. The Court explained that the statute "is assuredly dispositive of Amtrak's status as a Government entity for purposes of matters that are within Congress's control." *Lebron*, 513 U.S. at 392. But the Court held that "it is not for Congress to make the final determination of Amtrak's status as a Government entity for purposes of determining the constitutional rights of citizens affected by its actions." *Id.* Rather, an entity is "what the Constitution regards as the Government" if the entity is government-created and government-controlled. *Id.* at 392, 397. And Amtrak, the Court found, was government-created because it was established "by special law, for the furtherance of governmental objectives" and government-controlled

because the government "retains for itself permanent authority to appoint a majority of [Amtrak's] directors." *Id.* at 400.

Because *Lebron* concerned a First Amendment challenge, the Court limited its holding to that context. *Id.*; *see id.* at 394. However, in the years since *Lebron* our Office has applied *Lebron*'s test to the Appointments Clause and other structural provisions, *see Separation of Powers*, 20 Op. O.L.C. at 147–48, 148 n.70; *Officers of the United States*, 31 Op. O.L.C. at 121–22, and the Court has made clear that *Lebron* applies in the separation of powers context. Specifically, in *Association of American Railroads*, another case concerning Amtrak, the Court held that the separation of powers limitations of the Constitution similarly only apply to entities that qualify as part of the government and endorsed *Lebron*'s instruction that "the practical reality of federal control and supervision" determines an ostensibly private entity's governmental status under "'structural principles secured by the separation of powers.'" 575 U.S. at 55 (quoting *Bond v. United States*, 564 U.S. 211, 222 (2011)).

The Court then confirmed *Lebron*'s specific relevance to the Appointments Clause in *Free Enterprise Fund*. There, despite statutory provisions "specifying that [Public Company Accounting Oversight] Board members are not Government officials for statutory purposes," the Court accepted the parties' shared contention that "the Board is 'part of the Government' for constitutional purposes," *Free Enterprise Fund*, 561 U.S. at 485–86 (quoting *Lebron*, 513 U.S. at 397), and "that its members are 'Officers of the United States' who 'exercis[e] significant authority pursuant to the laws of the United States,'" *id.* at 486 (alteration in original) (quoting *Buckley*, 424 U.S. at 125–26); *see also id.* at 485 ("[T]he Board is a Government-created, Government-appointed entity."). On that basis, the Court proceeded to consider whether the Board's for-cause removal protection violated the structural constitutional principles embedded in Article II. *Id.* at 492–508.

Thus, all three decisions—*Lebron*, *Association of American Railroads*, and *Free Enterprise Fund*—support the view that the Appointments Clause applies when, and only when, persons or entities are part of the federal government for constitutional purposes.[3] Moreover, this under-

---

[3] We note that these three cases address government corporations, and, therefore, the precise articulation of the test in *Lebron* may not be appropriate in all circumstances.

standing of the Clause aligns with our Office's longstanding views about the application of the Clause across a range of domains that the Court has not addressed.

For example, our Office has long concluded that the Appointments Clause is not ordinarily a barrier to federal laws providing a role for state officials. *See Officers of the United States*, 31 Op. O.L.C. at 99; *Separation of Powers*, 20 Op. O.L.C. at 145. We explained in 1996 that part of the reason is that such laws typically do not "create federal 'offices,' which are then filled by (improperly appointed) state officials." *Separation of Powers*, 20 Op. O.L.C. at 145. "Rather, the 'public station, or employment' has been created by state law; the federal statute simply adds federal authority to a preexisting state office." *Id.* (quoting *Hartwell*, 73 U.S. (6 Wall.) at 393). In 2007, we similarly explained that, "even when they assist in the administration of federal law," "if [state officials] hold any office, they are officers of their state or locality, not of the United States." *Officers of the United States*, 31 Op. O.L.C. at 99.

These statements recognize that—although congressional provision of a role for state officials could implicate other constitutional principles, such as the anticommandeering doctrine, *see Printz v. United States*, 521 U.S. 898 (1997)—the Founders assumed that "the States would consent to allowing their officials to assist the Federal Government," *id.* at 911, and that "[t]he early federal government did indeed make provision for such action by state officials," *Officers of the United States*, 31 Op. O.L.C. at 100. Thus, the Appointments Clause is not a separate barrier to the exercise of federal authority by a state or local official, so long as the provision for a role under a federal statute does not transform a state or local official into a primarily federal one.[4]

---

[4] Although the Court has never squarely confronted the question of whether the Appointments Clause applies when federal laws assign authority to state officials, the Court's repeated emphasis throughout *Aurelius* on whether a state or local official exercises "primarily" state or local powers in ascertaining the nature of the individual's office implies that some delegation of federal power to state officials is permissible under the Appointments Clause. *See, e.g.*, 590 U.S. at 453, 460, 464. That is, where authority under federal law is assigned to a state or local official, but not to the extent that the official wields primarily federal power—which would effectively transform the nature of the individual's office from a state or local position to a federal one—such a conferral of a role or authority does not require an appointment consistent with the Appointments Clause.

Similarly, our Office has also concluded that the Appointments Clause does not prohibit the federal government from assigning a role in a statutory scheme to private individuals who do not occupy positions within a government entity. Indeed, some such assignments have a long historical pedigree. *See Separation of Powers*, 20 Op. O.L.C. at 146 & n.65. Thus, for example, we have repeatedly determined that individuals who proceed as *qui tam* relators under the False Claims Act, 31 U.S.C. § 3730(b), do not occupy a position within "what the Constitution regards as the Government," *Lebron*, 513 U.S. at 392, and therefore are not required to be appointed consistent with the Appointments Clause, *Separation of Powers*, 20 Op. O.L.C. at 146 & n.65.[5]

## II.

We turn now to the second requirement for an individual to be an officer who must be appointed consistent with the Appointments Clause, that the individual "exercis[e] significant authority pursuant to the laws of the United States." *Lucia*, 585 U.S. at 245 (quoting *Buckley*, 424 U.S. at 126). To that end, the Supreme Court has long recognized that the "broad swath" of the federal government is composed of "mere employees," not officers. *Id.* at 241, 245 (quoting *Buckley*, 424 U.S. at 126 n.162). For example, nearly a century and a half ago, the Court recognized that an overwhelming percentage of the "persons rendering service to the government" were "agent[s] or employee[s]," not "office[rs]." *Free Enter. Fund*, 561 U.S. at 506 n.9 (quoting *Germaine*, 99 U.S. at 509). And the Court has more recently observed that, with the federal government's growth over time, the "applicable proportion" of employees relative to officers "has of course increased dramatically since [*Germaine* was decided in] 1879." *Id.*

Against this backdrop, *Lucia* confirmed that a necessary condition for distinguishing the limited number of officers in the federal government, who must be appointed consistent with the Appointments Clause, from the

---

[5] Separate and apart from the fact that *qui tam* relators do not occupy a "position" within the federal government, the Appointments Clause would be inapplicable to such relators for another reason: Even if they did occupy a federal "position," such a position would be temporary, occasional, and personal and would extend only to a single case. *See supra* Part I.A; *see also Officers of the United States*, 31 Op. O.L.C. at 114; *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 805 (10th Cir. 2002).

broad swath of federal employees, who do not, is that the position they hold wields "significant authority." 585 U.S. at 245 (quoting *Buckley*, 424 U.S. at 126). We read *Lucia*'s emphasis on the extent of authority a position can properly exercise as confirming our Office's approach—an approach that has been largely consistent across time, despite differences in terminology.

## A.

*Lucia* is the latest in a long line of Supreme Court cases establishing that officers are distinguished from other individuals in the federal government by the extent of authority they can properly exercise. Since *Buckley v. Valeo*, the Court has implemented this distinction by asking whether a continuing position exercises "significant authority." *See, e.g.*, *Freytag*, 501 U.S. at 881–82; *Edmond v. United States*, 520 U.S. 651, 662 (1997); *Free Enter. Fund*, 561 U.S. at 506; *Lucia*, 585 U.S. at 245–50; *Arthrex*, 594 U.S. at 13. And although the Court has declined to articulate the precise metes and bounds of "significant authority," opting instead to leave the inquiry largely "unadorned," *Lucia*, 585 U.S. at 246, judicial opinions stretching back to the mid-nineteenth century make clear that the focus of the inquiry is the nature and relative importance of an individual's functions, *see Maurice*, 26 F. Cas. at 1214.

The Court's analysis in *Buckley* is instructive. *Buckley* considered whether the duties exercised by the commissioners of the Federal Election Commission ("FEC") required them to be appointed consistent with the Appointments Clause. 424 U.S. at 118. The Court concluded that the FEC's powers "of an investigative and informative nature" did not constitute significant authority, since they "f[ell] into the same general category as those powers which Congress might delegate to one of its own committees." *Id.* at 137. Such functions, the Court concluded, fell within Congress's prerogative to create positions to "perform duties only in aid of those functions that Congress may carry out by itself, or in an area sufficiently removed from the administration and enforcement of the public law as to permit their being performed by persons not 'Officers of the United States.'" *Id.* at 139.

But the Court reached the opposite conclusion as to the FEC's "more substantial powers"—including "functions with respect to the Commission's task of fleshing out the statute" and "functions necessary to ensure

compliance with the statute and rules." *Id.* at 137–38. With respect to the FEC's enforcement powers—"exemplified by its discretionary power to seek judicial relief"—the Court held that "primary responsibility for conducting civil litigation in the courts of the United States for vindicating public rights" represents the exercise of significant authority. *Id.* at 138, 140. Likewise, the Court concluded that "the Commission's broad administrative powers"—"rulemaking, advisory opinions, and determinations of eligibility for funds and even for federal elective office itself"—represented "the performance of a significant governmental duty exercised pursuant to a public law." *Id.* at 140–41.

*Buckley*'s approach of weighing the nature and importance of a position's duties to distinguish officers from employees, without laying down a precise line, has a long pedigree in judicial opinions. As early as 1823, Chief Justice Marshall held, while riding circuit, that the position of "agent of fortifications" in the United States Army qualified as an office because it exercised "important duties." *Maurice*, 26 F. Cas. at 1214. And in the years since *Buckley*, the Court has repeatedly held that agency adjudicators who oversee adversarial proceedings governing important rights are officers. *See Freytag*, 501 U.S. at 881–82 (characterizing special tax judges' power to "take testimony," "conduct trials," "rule on the admissibility of evidence," and "enforce compliance with discovery orders," as "important functions" that involve the exercise of "significant discretion"); *Lucia*, 585 U.S. at 249 (identifying Securities and Exchange Commission administrative law judges' ability to "issue decisions containing factual findings, legal conclusions, and appropriate remedies" as the exercise of significant authority); *Arthrex*, 594 U.S. at 13 (concluding that administrative patent judges' power to "adjudicat[e] . . . public rights" by "reconsidering an issued patent" constitutes "significant authority").

### B.

*Lucia*'s emphasis on "significant authority" is consistent with not only the Supreme Court's traditional approach to the Appointments Clause, but also the Executive Branch's longstanding practice. Indeed, well over a century ago the Attorney General issued an opinion recognizing that an "officer is distinguished from [an] employee in the greater importance, dignity, and independence of his position." *Second Deputy Comptroller of the Currency—Appointment*, 26 Op. Att'y Gen. 627, 628 (1908) (quoting

*People ex rel. Throop v. Langdon*, 40 Mich. 673, 682 (1879) (Cooley, J.)). Since then, our Office has continued to emphasize the importance of an official's functions as a key consideration in determining officer status, specifically referencing the Supreme Court's focus on "significant authority." For example, our 1996 opinion explicitly stated that "[a]n officer is distinguished from other full-time employees of the federal government by the extent of authority he or she can properly exercise." *Separation of Powers*, 20 Op. O.L.C. at 143.

Our 2007 opinion is consistent with this longstanding position. We acknowledge that terminology in that opinion could be understood as deviating from the 1996 opinion in how the nature and importance of a position's duties affect the application of the Appointments Clause. Specifically, our 2007 opinion, drawing principally on certain historical writings and nineteenth century state court decisions and treatises, concluded that the Clause applies when a position has been "delegate[ed] . . . a portion of the sovereign powers of the federal government" and noted that "one could define delegated sovereign authority as power lawfully conferred by the government to bind third parties, or the government itself, for the public benefit." *Officers of the United States*, 31 Op. O.L.C. at 78, 87. In isolation, this formulation could be read as deemphasizing the importance of an official's duties for Appointments Clause purposes and therefore deviating from the "significant authority" approach reflected in the Court's jurisprudence and our 1996 opinion.

But we do not think this is how our 2007 opinion should be understood. The 2007 opinion reaffirmed that the "significant authority" criterion is a "shorthand for the full historical understanding of the essential elements of a public office," *id.* at 87, and then indicated through the sources it cited that the importance of a particular position's authority may be relevant to whether the person occupying that position is an officer, *see, e.g.*, *id.* at 81 (citing William Rawle, *A View of the Constitution of the United States of America* 211 (2d ed. 1829)); *id.* at 84 (citing *Maurice*, 26 F. Cas. at 1214); *id.* at 89 (citing *Kennon*, 7 Ohio St. at 562–63; *Shelby v. Alcorn*, 36 Miss. 273, 291–92 (1858); and *Commonwealth v. Swasey*, 133 Mass. 538, 541 (1882)); *id.* at 106, 111–12 (again citing *Kennon*, 7 Ohio St. at 562–63). Accordingly, we understand the term "delegated sovereign authority," as used in our 2007 opinion, to denote the importance of a

position, not as an attempt to expand the definition of officer beyond those who exercise "significant authority."

Consistent with this understanding, our Office has not, since 2007, taken the position that every individual who may exercise a portion of the federal government's sovereign authority must be appointed consistent with the Appointments Clause. Our 2007 opinion thus did not result in a substantial change in our Appointments Clause approach—to the contrary, there has instead been significant continuity in our Appointments Clause practice across time.

As just one example, consistent with Supreme Court precedent, the Executive Branch has long recognized that employees occupying subordinate positions within the federal government who have not been directly vested with statutory or regulatory responsibilities, but who merely assist or act as the agents of superior officers vested with such responsibilities, need not be appointed as officers of the United States. *See Steele v. United States*, 267 U.S. 505, 507–08 (1925) (concluding that deputy U.S. Marshals were not officers of the United States, despite the coercive power they could exercise); *Civ.-Serv. Comm'n*, 13 Op. Att'y Gen. 516, 521 (1871) (discussing the early congressional practice of not requiring appointment consistent with the Appointments Clause for certain subordinate employees who were "representatives of the officers who appoint them" because, "perhaps, it was considered by Congress that the office was substantially in the principal"). Thus, notwithstanding the 2007 opinion's statement that "matters commonly considered law enforcement or execution" constitute "delegated sovereign authority," *Officers of the United States*, 31 Op. O.L.C. at 89, the Executive Branch has continued to understand after 2007 that line federal law enforcement agents and line attorneys who assist superior officials in conducting litigation on behalf of the federal government need not be appointed consistent with the Appointments Clause, *see* Transcript of Oral Argument at 27, *Lucia*, 585 U.S. 237 (No. 17-130). The authority exercised by these individuals is not sufficiently significant for Appointments Clause purposes because of the ways in which their discretion is constrained and because it is the superior officials, not the line employees assisting them, in whom the powers are vested. *Id.*

Indeed, in *Lucia* itself, the Department of Justice made clear that it understood our 2007 opinion as consistent with an inquiry into the im-

portance of an official's authority. *See, e.g.*, Reply Brief for Respondent Supporting Petitioners at 2, *Lucia*, 585 U.S. 237 (No. 17-130) ("[T]he power to bind the government or third parties *on significant matters* is sufficient for officer status when the official occupies a continuing position." (emphasis added)); Brief for Respondent Supporting Petitioners at 24–25, *Lucia*, 585 U.S. 237 (No. 17-130) (rejecting an approach that would compel the conclusion that "comparatively unimportant positions are 'offices'" and asking "whether the functions of the position were so significant that the Constitution required that the position be held by an officer appointed pursuant to the Appointments Clause" (emphasis omitted) (footnote omitted)). These statements by the Department comport with our Office's advice, and *Lucia* is consistent with that approach.[6]

## III.

For these reasons, consistent with the Supreme Court's jurisprudence and our Office's longstanding approach, individuals must be appointed pursuant to the Appointments Clause only if they (1) occupy a continuing position that is part of the federal government for constitutional purposes, and (2) exercise significant authority pursuant to the laws of the United States.

CHRISTOPHER C. FONZONE
*Assistant Attorney General*
*Office of Legal Counsel*

---

[6] We note that two Supreme Court Justices have recently suggested that the term "Officers of the United States" in the Appointments Clause should be read expansively to refer to "all federal civil officials '"with responsibility for an ongoing statutory duty."'" *Lucia*, 585 U.S. at 252–53 (Thomas, J., concurring, joined by Gorsuch, J.) (quoting *NLRB v. Sw. Gen., Inc.*, 580 U.S. 288, 314 (2017) (Thomas, J., concurring) (quoting the forthcoming manuscript of Jennifer L. Mascott, *Who Are "Officers of the United States"?*, 70 Stan. L. Rev. 443, 564 (2018))). We decline to adopt this approach, as, for reasons recounted in the text, it appears to be inconsistent with both the Supreme Court's and the Executive Branch's longstanding view of the Appointments Clause: Not only would the approach deem irrelevant the importance of an official's duties, but it could require significant portions of the federal workforce to be hired in a manner that complies with the Appointments Clause, contrary to the settled understanding that "the broad swath" of the government's workforce consists of "non-officer employees." *Lucia*, 585 U.S. at 245.