**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

JORGE ALEJANDRO AVALOS,

*Defendant - Appellant.*

No. 23-3944

D.C. No.
3:23-cr-00828-
DMS-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted September 15, 2025
Pasadena, California

Filed December 17, 2025

Before: Richard R. Clifton and Kenneth K. Lee, Circuit
Judges.[*]

Per Curiam Opinion

---

[*] This opinion had been approved by the panel and finalized but had not yet been filed when Judge Sandra Ikuta passed away. We would like to acknowledge Judge Ikuta's participation in this case and role in drafting the opinion. In accordance with General Order 3.2(h), this opinion is issued by the remaining panel members as a quorum pursuant to 28 U.S.C. § 46(d).

# SUMMARY[**]

## Appointments Clause

The panel affirmed the district court's denial of Jorge Alejandro Avalos's motion to dismiss an indictment charging him with illegal reentry under 8 U.S.C. § 1326.

In August 2007, Avalos, a citizen of Mexico, pleaded guilty to second-degree robbery under California Penal Code § 211, which is an "aggravated felony" that makes him deportable under 8 U.S.C. § 1227(a)(2)(A)(iii). He was subsequently placed in administrative removal proceedings and ordered removed by a deciding Service officer with the Department of Homeland Security.

Avalos argued in part that the administrative removal proceedings were fundamentally unfair because the deciding Service officer who issued the final administrative removal order was an "inferior Officer" under the Appointments Clause of the U.S. Constitution and had not been properly appointed.

The panel rejected this argument, holding that deciding Service officers in administrative removal proceedings are not "inferior Officers" subject to the Appointments Clause of the United States Constitution, as they do not occupy a "continuing and permanent office" and do not exercise significant authority pursuant to the laws of the United States. Avalos therefore failed to demonstrate that the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

removal proceedings were fundamentally unfair under 8 U.S.C. § 1326(d)(3).

## COUNSEL

Zachary J. Howe (argued) and David Fawcett, Assistant United States Attorneys; Daniel E. Zipp, Assistant United States Attorney, Chief, Appellate Section, Criminal Division; Andrew R. Haden, Acting United States Attorney; Office of the United States Attorney, United States Department of Justice, San Diego, California; for Plaintiff-Appellee.

Jessica Agatstein (argued), Appellate Attorney, Federal Defenders of San Diego Inc., San Diego, California, for Defendant-Appellant.

Jessica A. Morton, Robin F. Thurston, and Ananda V. Burra, Democracy Forward Foundation, Washington, D.C.; James Barker and Joseph E. Begun, Latham & Watkins LLP, Washington, D.C.; Mark Fleming, National Immigrant Justice Center, Chicago, Illinois; for Amicus Curiae the National Immigrant Justice Center.

**OPINION**

PER CURIAM:

At issue on appeal is whether deciding Service officers in administrative removal proceedings are "inferior Officers" subject to the requirements of the Appointments Clause of the United States Constitution. U.S. Const., art. II, § 2, cl. 2; 8 C.F.R. § 238.1. We hold that they are not.

I

Jorge Alejandro Avalos is a citizen of Mexico. In August 2007, Avalos pleaded guilty to second-degree robbery under California Penal Code § 211, which is an "aggravated felony" that makes him deportable under 8 U.S.C. § 1227(a)(2)(A)(iii). *See United States v. Martinez-Hernandez*, 932 F.3d 1198, 1202 (9th Cir. 2019). He was subsequently placed in administrative removal proceedings and ordered removed by a deciding Service officer with the Department of Homeland Security (DHS). Avalos challenges the validity of the officer's final administrative removal order (FARO).

A

Before addressing the facts of Avalos's case, we begin with an overview of the administrative removal process. Under the administrative removal system, DHS may order certain aliens removed without a hearing before an immigration judge (IJ). 8 U.S.C. § 1228(b)(1), (2); *Gomez-Velazco v. Sessions*, 879 F.3d 989, 991 (9th Cir. 2018). In order to issue a FARO, DHS must establish only that the individual: (1) is an alien, (2) has not been lawfully admitted for permanent residence nor has conditional permanent resident status under 8 U.S.C. § 1186a, and (3) has been

convicted of an aggravated felony and such conviction has become final. 8 C.F.R. § 238.1(b)(1). Administrative removal proceedings "are summary in nature because if DHS establishes those three predicates, the individual is conclusively presumed removable and categorically ineligible for most forms of discretionary relief from removal." *Gomez-Velazco*, 879 F.3d at 991 (citing 8 U.S.C. § 1228(b)(5), (c)).

Under the applicable regulation, two types of DHS officers preside over administrative removal proceedings: issuing Service officers and deciding Service officers. The issuing Service officer serves the alien with a Notice of Intent to issue a FARO, which "constitute[s] the charging document." 8 C.F.R. § 238.1(b)(2)(i). A deciding Service officer then determines whether to issue a FARO, terminate proceedings, or issue a notice to appear before an IJ. *Id.* § 238.1(d).

The regulation defines "deciding Service officer" as "a district director, chief patrol agent, or another immigration officer designated by a district director, chief patrol agent, the Deputy Executive Associate Commissioner for Detention and Removal, or the Director of the Office of Juvenile Affairs, so long as that person is not the same person as the" issuing Service officer. *Id.* § 238.1(a). No other statute or regulation, beyond 8 C.F.R. § 238.1, defines "deciding Service officer."

The deciding Service officer's authority is prescribed by the regulation. First, an issuing Service officer serves an alien with a Notice of Intent to issue a FARO. *Id.* § 238.1(b). If the alien fails to submit a timely response (and the evidence in the record establishes deportability by clear, convincing, and unequivocal evidence) or the alien concedes

deportability, then the deciding Service officer "shall issue and cause to be served" a FARO that states "the reasons for the deportation decision." *Id.* § 238.1(d)(1). If the alien submits a timely response, then the deciding Service officer must consider whether the response was sufficient. *Id.* § 238.1(d)(2). If, after receiving a response, the deciding Service officer "finds that deportability is established by clear, convincing, and unequivocal evidence in the record of proceeding," then the deciding Service officer "shall issue" a FARO "that states the reasons for the decision of deportability." *Id.* § 238.1(d)(2)(i).

However, if "the record of proceeding, including the alien's timely rebuttal, raises a genuine issue of material fact regarding the preliminary findings," the deciding Service officer has more options. *See id.* § 238.1(d)(2)(ii)(A). The deciding Service officer "may either obtain additional evidence from any source, including the alien, or cause to be issued a notice to appear to initiate removal proceedings" before an IJ. *Id.* If the deciding Service officer "considers additional evidence from a source other than the alien, that evidence shall be made a part of the record of proceeding, and shall be provided to the alien." *Id.* § 238.1(d)(2)(ii)(B). The alien may respond to the additional evidence. *Id.* After reviewing the additional evidence, if the deciding Service officer "finds that deportability is established by clear, convincing, and unequivocal evidence in the record of proceeding," then the deciding Service officer "shall issue" a FARO with associated reasons. *Id.* If the deciding Service officer "finds that the alien is not amenable to" administrative removal, the deciding Service officer "shall, where appropriate, cause to be issued a notice to appear for the purpose of initiating removal proceedings before an [IJ]." *Id.* § 238.1(d)(2)(iii).

After receiving a FARO, an alien may petition for review of the order with the appropriate United States Court of Appeals. 8 U.S.C. § 1252(a)(2)(D); *see* 8 C.F.R. § 238.1(h) (requiring maintenance of record for judicial review of FARO).

## B

We now turn to the facts of this case. In August 2007, Avalos pleaded guilty to second-degree robbery under California Penal Code § 211. Robbery under California Penal Code § 211 "is an aggravated felony" for purposes of § 1227(a)(2)(A)(iii). *Martinez-Hernandez*, 932 F.3d at 1202. Under 8 U.S.C. § 1227(a)(2)(A)(iii), "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."

On July 7, 2009, an issuing Service officer drafted a Notice of Intent to issue a FARO. The notice alleged that Avalos was subject to administrative removal based on his August 2007 conviction for an aggravated felony. The notice then informed Avalos of his rights. Among other things, the notice informed Avalos that he may be represented by counsel, at no expense to the government, that he could respond to the charges in writing, and that he could petition for review from a removal order. It also provided that Avalos could request an extension of time to respond, rebut the charges with supporting evidence, request an opportunity to review the government's evidence, admit deportability, designate a country for removal, or request withholding of removal. *See* 8 C.F.R. § 238.1(c)(1)–(2) (describing the nature of a response); *id.* § 238.1(b)(2) (describing required contents of the notice).

After DHS served the notice, Avalos acknowledged receipt and checked a box stating that he did "Not Wish to

Contest and/or to Request Withholding of Removal." Avalos admitted the allegations and charge in the notice, admitted that he was "deportable" and "not eligible for any form of relief from removal," and waived his "right to rebut and contest the above charges." Avalos also waived the right to petition for judicial review.

On July 22, 2009, relying solely on the notice and Avalos's waiver, the deciding Service officer adjudicated Avalos's case and issued a FARO removing Avalos to Mexico. The order included the following findings of fact and conclusions of law:

> (1) Avalos was "not a citizen or national of the United States," and was "not lawfully admitted for permanent residence."

> (2) Avalos had "a final conviction for an aggravated felony as defined" under 8 U.S.C. § 1101(a)(43)(F) (defined as a "crime of violence . . . for which the term of imprisonment [is] at least one year") and was ineligible for any discretionary relief from removal.

> (3) The "administrative record established by clear, convincing, and unequivocal evidence that" Avalos was "deportable as an alien convicted of an aggravated felony pursuant to" 8 U.S.C. § 1227(a)(2)(A)(iii).

Avalos was removed to Mexico. A few weeks later, he re-entered the United States and was arrested. Avalos pleaded guilty to illegal reentry under 8 U.S.C. § 1326 and received

a federal custodial sentence. Upon his release in February 2012, Avalos was again removed to Mexico.

In April 2023, Avalos re-entered the United States again and was arrested. The government charged him with illegal reentry under 8 U.S.C. § 1326. Avalos moved to dismiss the information under § 1326(d), which allows an alien to defend against an illegal reentry charge and collaterally challenge the validity of an underlying removal order if, among other things, the removal proceedings were "fundamentally unfair." 8 U.S.C. § 1326(d)(3). Avalos argued in part that the administrative removal proceedings were fundamentally unfair because the deciding Service officer who issued the FARO was an "inferior Officer[]" under the Appointments Clause of the U.S. Constitution and had not been properly appointed. U.S. Const., art. II, § 2, cl. 2.[1] In response, the government argued that because the deciding Service officer was an employee and not an "inferior Officer[]," the Appointments Clause was not implicated.

On August 18, 2023, the district court denied Avalos's motion to dismiss the information, holding that there was no Appointments Clause violation and therefore no fundamental unfairness under § 1326(d)(3). Avalos entered a guilty plea that preserved his right to appeal the denial of the motion to dismiss. The district court accepted the plea and sentenced Avalos to 18 months in custody. He now appeals the denial of his motion to dismiss.

---

[1] Under the Appointments Clause, "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."

## II

The court has jurisdiction under 28 U.S.C. § 1291. "We review de novo the district court's denial of [a] motion to dismiss" under 8 U.S.C. § 1326(d). *United States v. Portillo-Gonzalez*, 80 F.4th 910, 915 (9th Cir. 2023). "We review de novo the constitutionality of the appointment . . . process" under the Appointments Clause. *Duenas v. Garland*, 78 F.4th 1069, 1072 (9th Cir. 2023).

## III

## A

Under 8 U.S.C. § 1326(a), "any alien who—(1) has been . . . removed or has departed the United States while an order of . . . removal is outstanding, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States . . . shall be fined . . . or imprisoned . . . or both."[2] Generally, an alien may not collaterally challenge the validity of the order of removal that is the predicate to an illegal reentry charge. *See* 8 U.S.C. § 1326(a)(1), (b), (d). However, § 1326(d) authorizes a collateral attack on the proceeding that resulted in the removal order in certain circumstances. Section 1326(d) provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection

---

[2] "[T]here is no legally significant distinction between deportation and removal for purposes of § 1326." *United States v. Lopez-Gonzalez*, 183 F.3d 933, 934–935 (9th Cir. 1999); *see also id.* at 934 n.4 (citing Illegal Immigration Reform and Immigration Responsibility Act of 1996 § 309(d)) ("[A]ny reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation.").

(a)(1) or subsection (b) unless the alien demonstrates that—

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the [removal] order;

> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

> (3) the entry of the order was fundamentally unfair.

A "removal order is fundamentally unfair under § 1326(d)(3) if (1) an alien's due process rights were violated by defects in the underlying deportation proceeding, and (2) he suffered prejudice as a result." *United States v. Gambino-Ruiz*, 91 F.4th 981, 985 (9th Cir. 2024) (citation modified). Avalos contends that he has satisfied all three prerequisites under § 1326(d) and therefore may collaterally challenge the validity of his predicate removal order.

## B

Avalos's primary argument is that his underlying administrative removal proceeding resulted in the entry of a deportation order that was "fundamentally unfair" under § 1326(d)(3) because the deciding Service officer in that proceeding was an inferior officer who was not properly appointed under the Appointments Clause. The Appointments Clause provides that "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const., art. II, § 2, cl. 2. While

officers must be appointed in accordance with the Appointments Clause, the Constitution "cares not a whit" about who hires non-officer employees to their positions. *Lucia v. SEC*, 585 U.S. 237, 245 (2018).**[3]**

The Supreme Court has identified two considerations for distinguishing between officers and employees. First, officers occupy "continuing position[s] established by law." *Id.* (citing *United States v. Germaine*, 99 U.S. 508, 511–12 (1879)). Second, officers exercise "significant authority pursuant to the laws of the United States." *Id.* (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976) (per curiam)). This inquiry "focuse[s] on the extent of power any individual wields in carrying out his assigned functions." *Id.*

1

To determine whether an individual occupies a "continuing position established by law," *id.*, courts consider various factors, including "tenure, duration, emolument, and duties," *Germaine*, 99 U.S. at 511–12. In evaluating the individual's duties, we consider whether those duties are "continuing and permanent" or "occasional and intermittent." *Id.*

In *Germaine*, the Supreme Court held that civil surgeons appointed by the Commissioner of Pensions to "make the periodical examination of pensioners" were not officers with "continuing and permanent" duties. *Id.* at 508, 511–12. Because the surgeons were "only to act when called on by the Commissioner of Pensions in some special case," were

---

[3] A separate consideration, which is not at issue in this appeal, is whether an individual is an inferior or principal officer. Principal offers must be appointed by the President with advice and consent of the Senate. *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 759 (2025).

"required to keep no place of business for the public use," gave "no bond and t[ook] no oath," and no "regular appropriation [wa]s made to pay" their compensation, the surgeons' duties were "occasional and intermittent" rather than "continuing and permanent." *Id.* at 512; *see also Auffmordt v. Hedden*, 137 U.S. 310, 326–28 (1890) (holding merchant appraiser was not an officer because he "ha[d] no general functions, nor any employment which has any duration as to time, or which extends over any case further than as he is selected to act in that particular case"). Therefore, the surgeons did not qualify as inferior officers.

By contrast, Special Trial Judges (STJs) for the Tax Court and Administrative Law Judges (ALJs) for the Securities and Exchange Commission (SEC) have "continuing and permanent" duties. *Freytag v. Comm'r of Internal Rev.*, 501 U.S. 868, 881 (1991); *Lucia*, 585 U.S. at 247–48. *Freytag* reasoned that STJs held an office "established by Law" under the Appointments Clause, as "the duties, salary, and means of appointment for that office are specified by statute." 501 U.S. at 881; *see* 26 U.S.C. § 7443A (specifying the duties, salary, and means of appointment for STJs). *Freytag* contrasted STJs with "special masters, who are hired by Article III courts on a temporary, episodic basis, whose positions are not established by law, and whose duties and functions are not delineated in a statute." 501 U.S. at 881. SEC ALJs likewise hold "a continuing office established by law," as they receive career appointments by regulation "to a position created by statute down to its 'duties, salary, and means of appointment.'" *Lucia*, 585 U.S. at 247–48 (citing 5 C.F.R. § 930.204(a) and *Freytag*, 501 U.S. at 878); *see* 5 U.S.C. §§ 5372, 3105 (specifying the duties, salary, and means of appointment for ALJs). We have also held that IJs and

members of the Board of Immigration Appeals (BIA) are officers with "responsibilities [that] are legally defined and continuous," as provided by statute and regulation. *Duenas*, 78 F.4th at 1073 (citing 8 U.S.C. § 1229a and 8 C.F.R. § 1003.1).

In short, a position is not continuing and permanent where, like the position of special master, the responsibilities of the position are temporary, episodic, and periodic rather than continuous, the duties, functions, salary and means of appointment are not delineated by law, and there is no regular appropriation made to pay compensation for discharging those responsibilities. *Freytag*, 501 U.S. at 881.

2

The second consideration noted in *Lucia* is whether individuals exercise "significant authority pursuant to the laws of the United States." *Lucia*, 585 U.S. at 245. The Supreme Court has recognized that this test, which focuses "on the extent of power an individual wields in carrying out his assigned functions," is "framed in general terms." *Id.* Although the Court indicated it might some day "refine or enhance the test," it declined to do so in *Lucia*, and instead applied the test by comparing the "extent of power" at issue with the authority wielded by the STJs in *Freytag*, whom the Court previously had deemed to be "inferior Officers." *See id.* at 246, 248–49; *Freytag*, 501 U.S. 881–82.

In *Freytag*, the Supreme Court determined that Tax Court STJs were inferior officers. The STJs at issue were authorized to hear and decide cases for the Tax Court in "comparatively narrow and minor matters." *Freytag*, 501 U.S. at 873. In more important matters, they were authorized to prepare proposed findings and an opinion for the Tax Court, though final decisions were rendered by a regular Tax

Court judge. *Id.* at 874. No limitation was placed on the scope of issues the STJs could address. The Court held that the STJs exercised significant authority in executing their duties and performed "more than ministerial tasks." *Id.* at 881. Specifically, the Court noted that the STJs "take testimony, conduct trials, rule on the admissibility of evidence, and have the power to enforce compliance with discovery orders." *Id.* at 881–82.

Following *Freytag*, the Court in *Lucia* held that SEC ALJs were inferior officers because they "exercise the same 'significant discretion' when carrying out the same 'important functions' as STJs do." *Lucia*, 585 U.S. at 248 (quoting *Freytag*, 501 U.S. at 878). Like STJs, SEC ALJs could "take testimony," "conduct trials," "rule on the admissibility of evidence," and "enforce compliance with discovery orders." *Id.* (quoting *Freytag*, 501 U.S. at 881–82). Moreover, "at the close of those proceedings," SEC ALJs "issue decisions . . . with potentially more independent effect" than the Tax Court STJs in *Freytag*. *Id.* at 248–49. No limitation was placed on the scope of issues the ALJs could address. The SEC ALJs "issue decisions containing factual findings, legal conclusions, and appropriate remedies" which, absent SEC review, become final and are deemed the action of the SEC. *Id.* at 249. *Lucia* concluded that "[t]hat last-word capacity makes this an *a fortiori* case: If the Tax Court's STJs are officers, as *Freytag* held, then the [SEC]'s ALJs must be too." *Id.*

After *Lucia*, we held that IJs and members of the BIA qualify as "inferior Officers." *Duenas*, 78 F.4th at 1073. Though primarily focused on the distinction between principal and inferior officers, *Duenas* noted that IJs and BIA members "wield substantial authority." *Id.* IJs "conduct adversarial hearings in removal proceedings . . . ,

and BIA members perform substantive appellate review of [IJs]' removal determinations, leading to decisions that combine factual and legal analysis and that order suitable remedies." *Id.* (citation modified).

While the Supreme Court has not defined the exact boundaries of the "significant authority" test, it has taken a broad, holistic approach to the inquiry, considering the individual's authority as a whole and comparing it to the authority exercised by individuals previously deemed to be inferior officers. *See Lucia*, 585 U.S. at 246 (comparing authority of SEC ALJs to Tax Court STJs in *Freytag*). Such an analysis evaluates a range of factors, including the scope and breadth of the individual's authority, the degree of discretion afforded, and the individual's procedural powers, among other things. *See id.* at 248 (considering ALJs' discretion, procedural powers, and autonomy); *Duenas*, 78 F.4th at 1073 (considering substantive nature of IJ and BIA authority and power to conduct adversarial hearings); *United States v. Gantt*, 194 F.3d 987, 999 (9th Cir. 1999), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) (stating that United States Attorneys are "clearly" officers of the United States and pointing to their broad authority to enforce federal law); *U.S. ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 758–59 (9th Cir. 1993) (holding that a qui tam relator "who litigates only a single case" and "must yield" to the government when it elects to intervene does not exercise "significant authority"). Other circuits are in accord, taking a flexible multi-faceted approach to the "significant authority" inquiry. *See, e.g.*, *Lofstad v. Raimondo*, 117 F.4th 498, 498 (3d Cir. 2024) (stating that officers may exercise "significant authority" when they have "significant duties and discretion to carry them out," "[p]ower akin to a federal judge's," and "broad

administrative powers," and that a court may also consider whether the officers' exercise of power is controlled by another branch of government); *Tucker v. Comm'r of Internal Revenue*, 676 F.3d 1129, 1133 (D.C. Cir. 2012) (considering "(1) the significance of the matters resolved by the officials, (2) the discretion they exercise in reaching their decisions, and (3) the finality of those decisions").

## IV

We now consider Avalos's argument that his administrative removal proceedings were "fundamentally unfair" under § 1326(d)(3) because the deciding Service officer who issued the final removal order was an inferior officer under the Appointments Clause and had not been properly appointed. We turn to the two considerations for determining whether individuals are officers or employees: (1) whether the individual holds a continuing position established by law, and (2) whether the individual exercises significant authority pursuant to the laws of the United States. *Lucia*, 585 U.S. at 245. Considering each in turn, we hold that deciding Service officers neither occupy a continuing position nor exercise significant authority, and therefore are not inferior officers.

## A

We determine whether deciding Service officers hold a "continuing position established by law," *id.*, by considering several factors, including "tenure, duration, emolument, and duties" and whether those duties are "continuing and permanent" rather than "occasional and intermittent." *Germaine*, 99 U.S. at 511–12. After evaluating those

factors, we conclude that deciding Service officers do not occupy a continuing position established by law.[4]

No statute sets forth the duties, functions, salary, nor means of appointment of a deciding Service officer, and the regulation delineating the position provides for duties that are "occasional and intermittent" rather than "continuing and permanent." *Id.* at 512. Under the regulation, any number of enumerated DHS employees—or "another immigration officer designated" by particular officials—may serve as a deciding Service officer, as long as they are not the issuing Service officer in the case. 8 C.F.R. § 238.1(a); *see also* 8 U.S.C. § 1228(b)(4)(F). The regulation allows a deciding Service officer to be selected as needed from a list of other employees for any period of time. 8 C.F.R. § 238.1(a). Moreover, the regulation does not provide for any "regular appropriation" to pay deciding Service officers' compensation. *Germaine*, 99 U.S. at 512. By contrast, the statute in *Freytag* authorized the chief judge to "appoint special trial judges," and it detailed STJ responsibilities. 26 U.S.C. § 7443A. Similarly, the statutes in *Lucia* provided that "each agency shall appoint . . . administrative law judges," 5 U.S.C. § 3105, and demarcated ALJ levels of pay, *id.* § 5372. *See also Morrison v. Olson*, 487 U.S. 654, 663–64 (1988) (independent counsel appointed pursuant to

---

[4] Avalos argues that the government forfeited the argument that deciding Service officers do not hold "continuing and permanent" positions by failing to raise it in the district court and failing to develop it on appeal. Although the government did not raise the argument before the district court, "it is claims that are deemed waived or forfeited, not arguments." *Obrien v. Bisignano*, 142 F.4th 687, 694 (9th Cir. 2025) (quoting *Brown v. Arizona*, 82 F.4th 863, 873 (9th Cir. 2023) (en banc)). The government adequately developed and presented this argument on appeal. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020).

statute that required that the Department of Justice "pay all costs" related to the office and governed the length of the independent counsel's tenure).

Avalos argues that deciding Service officers hold continuing positions to the same extent as the task force members in *Kennedy v. Braidwood Management, Inc.*, whom the Supreme Court held were inferior officers. *See* 606 U.S. at 762. But *Braidwood* provides no guidance for determining when employees are inferior officers because there was no dispute that the task force members were officers subject to the Appointments Clause. *Id.* at 759. The parties disputed only whether the task force members were inferior or principal officers. Therefore, the Court did not address the question whether the task force members held "continuing position[s] established by law" or had "significant authority" to be deemed inferior officers rather than employees. *Lucia*, 585 U.S. at 245. Avalos's reliance on *Morrison v. Olson* and *Weiss v. United States* is also misplaced because neither opinion squarely addressed whether the officers' duties were continuing and permanent or assessed the relevant *Germaine* factors. *See Weiss v. United States*, 510 U.S. 163, 169 (1994) ("The parties do not dispute that military judges, because of the authority and responsibilities they possess, act as 'Officers' of the United States."); *Morrison*, 487 U.S. at 671 n.12 ("It is clear that appellant is an officer of the United States, not an employee.") (internal quotation marks omitted).

## B

Turning to the second inquiry, deciding Service officers do not possess authority sufficient to confer officer status. As we explained, we consider deciding Service officers' authority as a whole, including the scope of authority, the

range of discretion, and the nature of their procedural powers, and then compare this holistically to the authority of the adjudicatory officers in *Freytag*, *Lucia*, and *Duenas*.

First and most important, deciding Service officers are limited in the scope of their decisions and have limited authority to issue a FARO. Deciding Service officers are not free to consider "any applicable ground" for removal, 8 U.S.C. § 1229a(a)(2), but may determine only if the individual: (1) is an alien; (2) has not been lawfully admitted for permanent residence; (3) has been convicted of an aggravated felony; and (4) is deportable. 8 C.F.R. § 238.1(b)(1). Avalos argues that this authority confers discretion on deciding Service officers because deciding whether a particular conviction constitutes an aggravated felony under the "categorical approach" is far from straightforward or clearcut. *See, e.g.*, *Martinez-Hernandez*, 932 F.3d at 1205. But the difficulty of analyzing a legal issue does not mean that deciding Service officers exercise significant discretion. If an alien has a conviction for an aggravated felony, the deciding Service officer has no discretionary authority to grant relief from removal; the alien is "conclusively presumed to be deportable." 8 U.S.C. § 1228(b)(5), (c). And if there is a "genuine issue of material fact" and deportability is not shown by "clear, convincing, and unequivocal evidence," the deciding Service officer cannot order removal. 8 C.F.R. § 238.1(d)(1)–(2).

Further, deciding Service officers do not possess broad procedural powers. Although they may "obtain additional evidence" to aid their decisions, *id.* § 238.1(d)(2)(ii)(A), "administer oaths," *id.* § 287.5(a), and evaluate "affidavit(s), documentary information, or other specific evidence," *id.* § 238.1(c)(2)(i), (d)(2)(i)–(ii), (d)(3), those powers are meaningfully circumscribed by statute and regulation.

Deciding Service officers may solicit additional evidence
only if the alien submits a written response and the record
raises a genuine issue of material fact. *Id.* § 238.1(d)(2).
Admission of additional evidence does not require an
adversarial hearing. Rather, the deciding Service officer
considers the additional evidence and makes a determination
based on all the evidence. *Id.* § 238.1(d)(2)(ii)(B).

Comparing deciding Service officers to the adjudicatory
officers in *Freytag*, *Lucia*, and *Duenas* confirms they lack
sufficient authority to be deemed inferior officers. The Tax
Court STJs, SEC ALJs, BIA members, and IJs are not
limited to deciding a single legal issue, but rather prepare
opinions addressing the full scope of administrative issues.
*See* 26 U.S.C. § 7443A(b) (describing range of proceedings
which may be assigned to Tax Court STJs); 15 U.S.C. § 78d-
1(a) (SEC "shall have authority to delegate . . . any of its
functions" to an ALJ); 8 U.S.C. § 1229a (providing that IJs
consider "any applicable ground of inadmissibility . . . or
any applicable ground of deportability"). In *Freytag*, for
example, the statute at issue authorized the Chief Judge of
the Tax Court to assign a broad range of cases: "any
declaratory judgment proceeding," "any proceeding under
section 7463" (disputes involving $50,000 or less), "any
proceeding in which the deficiency or claimed overpayment
does not exceed $10,000," and "any other proceeding which
the Chief Judge may designate." 501 U.S. at 873 (citing 26
U.S.C. § 7443A(b)). Deciding Service officers' authority is
much more circumscribed, limited to a narrow set of cases
and considerations that do not require the exercise of
significant discretion. *See* 8 C.F.R. § 238.1(b)(1). And
unlike Tax Court STJs and SEC ALJs, deciding Service
officers do not possess "nearly all the [procedural] tools of
federal trial judges." *Lucia*, 585 U.S. at 248. Nor does the

regulation governing deciding Service officers' authority provide for the kind of adversarial hearings conducted by IJs. *See* 8 C.F.R. § 238.1(d); 8 U.S.C. § 1229a(a)–(b) (requiring that IJs conduct proceedings and examine the alien and any witnesses).

Avalos argues that we should compare the deciding Service officers' authority with that of the immigration inspector in *Nishimura Ekiu v. United States*, who was deemed to be an inferior officer.  142 U.S. 651 (1892).  In *Nishimura Ekiu*, the Court considered whether an immigration inspector at the port of San Francisco who refused to allow the petitioner to land had been properly appointed.  *Id.* at 662.  Specifically, the Court considered whether the inspector's appointment by the Secretary of the Treasury was improper, and whether he should have instead been appointed by the Superintendent of Immigration.  *Id.* at 663.  The Court held that the inspector was "duly appointed" under the statute at issue, which "manifestly contemplate[d] and intend[ed] that the inspectors of immigration shall be appointed by the secretary of the treasury."  *Id.* at 663–64. The Court further stated that "the constitution does not allow congress to vest the appointment of inferior officers elsewhere than in the president alone, in the courts of law, or in the heads of departments."  *Id.* at 663 (internal quotation omitted).  Avalos reads this statement as holding that the immigration inspector was an inferior officer who had to be appointed by the Secretary of the Treasury, a "Head[] of Department[]," pursuant to the Appointments Clause.  U.S. Const. Art. II, § 2, cl. 2.

Assuming Avalos's reading of *Nishimura Ekiu* is correct,[5] a comparison of the immigration inspector's authority in that case with the authority of a deciding Service officer does not support Avalos's argument. Inspection officers were granted broad authority. They were responsible for boarding vessels, inspecting and examining immigrants, and removing and detaining them for inspection. *Nishimura Ekiu*, 142 U.S. at 662. In determining the "right of any alien to land," inspectors determined a broad range of issues, including whether individuals were "idiots, insane persons, paupers or persons likely to become a public charge, persons suffering from a loathsome or a dangerous contagious disease, persons who have been convicted of a felony or other infamous crime or misdemeanor involving moral turpitude, polygamists, and also any person whose ticket or passage is paid for with the money of another or who is assisted by others to come . . . ." Act of Mar. 3, 1891, ch. 551, §§ 1, 8, 26 Stat. 1084. Deciding Service officers do not have the same broad authority or exercise the same level of discretion as historic immigration inspectors. Highlighting this point, in *Nishimura Ekiu* itself, the inspector refused to allow the alien to land because she was a "person likely to become a public charge." *Nishimura Ekiu*, 142 U.S. at 662. Today, such determinations are made by IJs. *See* 8 U.S.C. §§ 1229a(a), 1182(a)(4), 1227(a)(5). Deciding Service officers' authority is fundamentally different, limited to the three straightforward determinations explained above that do not involve the exercise of significant discretion. In short,

---

[5] The parties dispute whether the Court's reference to the Appointments Clause was dicta. We do not decide the issue in light of our conclusion here.

neither the historical immigration inspector nor today's IJs are appropriate analogues to deciding Service officers.

Considering deciding Service officers' duties as a whole, we hold that they do not have significant authority. Deciding Service officers' authority and discretion is highly constrained by regulation and limited to a narrow set of issues. Such limited powers do not constitute "significant authority pursuant to the laws of the United States." *Lucia*, 585 U.S. at 245.

V

We hold that deciding Service officers in administrative removal proceedings are not inferior officers subject to the Appointments Clause. They do not occupy a "continuing and permanent office," *Germaine*, 99 U.S. at 512, nor do they exercise significant authority pursuant to the laws of the United States. *Lucia*, 585 U.S. at 245. Avalos therefore fails to demonstrate fundamental unfairness under § 1326(d)(3).

**AFFIRMED**.